## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK S. HOLDEN, RICHARD ANDISIO, EDWARD MARSHALL, ANN MARIE MARSHALL, ARTHUR CHRISTIANI, JOHNIELLE DWYER, PAWEL KRZYKOWSKI, MARIOLA KRZYNOWEK, JAMES HOWE, and CINDY A. PEREIRA, individually, and on behalf of all others similarly situated, | Case No. 23-2115 |
| Plaintiffs, | |
| v. | CLASS ACTION |
| | JURY TRIAL DEMANDED |
| GUARDIAN ANALYTICS, INC., ACTIMIZE INC., and WEBSTER BANK, N.A., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    PROCEDURAL BACKGROUND.....................................................................2

       A.     Filing of Individual Cases and Consolidation.........................................2

       B.     Legal Investigation and Settlement Negotiations ...................................3

III.   THE TERMS OF THE PROPOSED SETTLEMENT ....................................4

       A.     Certification of the Settlement Class .....................................................4

       B.     Relief for the Settlement Class Members ...............................................5

       C.     Released Class Claims ............................................................................8

       D.     Attorneys' Fee, Costs, Expenses, and Service Awards ..........................8

       E.     Settlement Administrator and the Notice Plan........................................9

IV.    ARGUMENT ....................................................................................................12

       A.     Legal Standard ......................................................................................12

       B.     The Court Should Certify the Class for Purposes of the Proposed
              Settlement .............................................................................................13

       C.     The Settlement Satisfies the Requirements for Preliminary Approval..................19

       D.     The Court Should Approve the Proposed Notice Plan ..........................27

V.     CONCLUSION.................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfaro v. First Advantage Lns Screening Solutions, Inc.*,
2017 WL 3567974 (D.N.J. Aug. 16, 2017) ............................................................................... 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................... *passim*

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................................ 18

*Baby Neal for and by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ................................................................................................... 16

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ........................................................................................... 15, 16

*Buzzaro v. Ocean City*,
2009 WL 1617887 (D.N.J. June 9, 2009) ......................................................................... 16

*Castro v. Sanofi Pasteur Inc.*,
2017 WL 4776626 (D.N.J. Oct. 23, 2017) ....................................................................... 27

*Dartell v. Tibet Pharms., Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017) ....................................................................... 21

*Dewey v. Volkswagen AG*,
681 F.3d 170 (3d Cir. 2012) ............................................................................................. 17

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ............................................................................................. 12

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ............................................................................................................ 28

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................ 24

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .............................................................................................. 20

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ...........................................................................................28

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .....................................................................................22, 23

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000) .................................................................................26

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................................................16, 24

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012) .................................................................................23

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003) .........................................................................................18

*In re Modafinil Antitrust Litigation*,
  837 F.3d 238 (3d Cir. 2016) ...........................................................................................14

*In re Morgan Stanley Data Sec. Litig.*,
  No. 1:20-cv-05914-AT (S.D.N.Y), ECF No. 156 ...........................................................26

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ...........................................................................16, 17, 18, 21

*In re NFL Players Concussion Injury Litig.*,
  775 F.3d 570 (3d Cir. 2014) ...........................................................................................13

*In re Pet Food Prods. Liab. Litig.*,
  MDL No. 1850, 2008 WL 4937632 (D.N.J. Nov. 18, 2008) ........................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................................................. *passim*

*In re Remicade Antitrust Litig.*,
  2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ...........................................................14, 17, 18

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) .................................................................16

*In re Target Corp. Customer Data Sec. Breach Litigation*,
    309 F.R.D. 482 (D. Minn. 2015) .........................................................21

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .............................................12, 14, 24, 25

*Kanefsky v. Honeywell Int'l Inc*,
    2022 WL 1320827 (D.N.J. May 3, 2022) ..........................................20

*Keefer v. Fulton Bank, N.A.*,
    No. 1:23-md-03056, ECF No. 106 .......................................................26

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ...............................................................24

*McGee v. Cont'l Tire N. Am., Inc.*,
    2009 WL 539893 (D.N.J. Mar. 4, 2009) .......................................25, 26

*McLennan v. LG Elecs. USA, Inc.*,
    2012 WL 686020 (D.N.J. Mar. 2, 2012) .............................................23

*McPherson v. American Bank Systems, Inc.*,
    No. 20-cv-1307-G (W.D. Okl.), ECF Nos. 54, 73 .............................26

*O'Brien v. Brain Rsch. Labs, LLC*,
    2012 WL 3242365 (D.N.J. Aug. 9, 2012) ..........................................25

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
    2017 WL 2734714 (D.N.J. June 26, 2017) .........................................23

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ...............................................................14

*Roofer's Pension Fund v. Paper*,
    333 F.R.D. 66 (D.N.J. 2019) ...............................................................14

*Russell v. Educ. Comm'n for Foreign Med. Graduates,*
  15 F.4th 259 (3d Cir. 2021) ................................................................................................13, 16

*Shapiro v. Alliance MMA, Inc.,*
  2018 WL 3158812 (D.N.J. June 28, 2018) ...........................................................................28

*Smith v. Merck & Co., Inc.,*
  2019 WL 3281609 (D.N.J. July 19, 2019) ......................................................................15, 19

*Smith v. Triad of Alabama, LLC,*
  2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ......................................................................21

*Stewart v. Abraham,*
  275 F.3d 220 (3d Cir. 2001) ..................................................................................................14

*Sullivan v. DB Invs., Inc.,*
  667 F.3d 273 (3d Cir. 2011) .............................................................................................14, 18

*Varacallo v. Massachusetts Mut. Life Ins. Co.,*
  226 F.R.D. 207 (D.N.J. 2005) .........................................................................................18, 19

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................................................................14

*Weiss v. Mercedes–Benz of N. Am.,*
  899 F. Supp. 1297 (D.N.J. 1995) ..........................................................................................23

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Plaintiffs Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.

## I.   __INTRODUCTION__

Plaintiffs initiated this class action litigation against Defendants Guardian Analytics, Inc. ("Guardian"), Actimize Inc. ("Actimize"), and Webster Bank, N.A. ("Webster Bank") (collectively, "Defendants"), alleging that they failed to secure and safeguard Plaintiffs' and Settlement Class Members' personally identifiable information ("PII"), including names, Social Security numbers, or financial account numbers. Plaintiffs allege that between November 27, 2022 and January 22, 2023, unauthorized individuals gained access to Guardian's network systems and acquired or had access to the PII of Plaintiffs and other class members (the "Data Incident").[1] Guardian, which was acquired by Actimize in 2020, provides fraud detection services to Webster Bank. Webster Bank provides the PII of Plaintiffs and class members to Guardian to facilitate these services.

After months of contested, arms' length negotiations, which included mediation before the Honorable Stephen Orlofsky (Ret.), the parties have reached a proposed class Settlement. The Settlement requires Defendants to establish a non-reversionary cash common fund of $1,430,207.50, which will be utilized to fund: (1) approved claims of all eligible and participating

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement, which is attached to Plaintiffs' Motion as Exhibit 1.

Settlement Class Members; (2) notice and administration costs; (3) Court-approved attorneys' fees, costs, and expenses; and (4) Court-approved service awards.

As discussed below, the Settlement readily satisfies the standards for preliminary approval. *See Kress v. Fulton Bank*, N.A., 2021 WL 9031639, at *9 (D.N.J. Sept. 17, 2021) ("[P]reliminary approval is not binding and is granted unless the proposed settlement is obviously deficient."). Accordingly, Plaintiffs respectfully request that the Court begin the approval process by preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; preliminarily certifying the proposed Settlement Class; and approving the proposed plan for disseminating the notices as the best notice practicable. A proposed order granting the motion is attached as Exhibit 5.

## II.  PROCEDURAL BACKGROUND

### A.  Filing of Individual Cases and Consolidation

On April 14, 2023, Plaintiffs Mark Holden and Richard Andisio filed a Class Action Complaint against Defendants alleging negligence, negligence per se, breach of implied contract, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*. based on Defendants' alleged failure to secure and safeguard Plaintiffs' and class members' PII. No. 2:23-cv-02115-WJM-LDW, Compl., ECF No. 1. In the days and weeks that followed, five additional actions asserting similar claims arising from the same Data Incident were filed: *Marshall. v. Guardian Analytics*., No. 23-2156 (filed April 18, 2023), *Christiani v. Guardian Analytics*, No. 23-2158 (filed April 18, 2023), *Dwyer v. Guardian Analytics*, No. 23-2320 (filed April 27, 2023), *Krzykowski v. Guardian Analytics*, No. 23-2322 (filed April 27, 2023), and *Pereira v. Guardian Analytics*, No. 23-2431 (filed May 3, 2023).

Plaintiffs self-organized and, on May 25, 2023, moved the Court pursuant to Fed. R. Civ. P. 42(a) and Local Rule 42.1 to consolidate the six actions. *See generally* ECF No. 16. The

consolidation motion asked the Court to appoint Ben Barnow of Barnow and Associates, P.C. and Charles E. Schaffer of Levin Sedran & Berman LLP as Interim Co-Lead Counsel[2] to lead the consolidated litigation on behalf of Plaintiffs and the putative class. *Id*. The Court granted the motion on July 25, 2023. ECF No. 24. The Court further ordered Plaintiffs to file a consolidated complaint within 30 days. *Id*. Plaintiffs timely filed the currently operative Consolidated Amended Class Action Complaint ("CAC") on August 24, 2023. ECF No. 27. The CAC asserts claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*., and declaratory judgment against Defendants.

### B.  Legal Investigation and Settlement Negotiations

Class Counsel are experienced data breach litigators. *See* Declaration of Ben Barnow, attached hereto as Exhibit 2 ("Barnow Decl."), ¶¶ 9–10; Declaration of Charles E. Schaffer, attached hereto as Exhibit 3 ("Schaffer Decl."), ¶¶ 9–12. Collectively, they have successfully litigated dozens of data breach class actions. *Id*. Following initial discussions outlining the general parameters of a potential settlement, the parties agreed to mediate and engaged the Honorable Stephen Orlofsky (Ret.) as their mediator. Barnow Decl., ¶ 3; Schaffer Decl., ¶ 3. Prior to the mediation, Class Counsel analyzed the legal landscape thoroughly—including issues related to tort remedies, contract remedies, and class certification—to fully evaluate the risks and benefits to potential early resolution. Barnow Decl., ¶ 4; Schaffer Decl., ¶ 4. Topics analyzed included the value of personal identifying information; hacking; consequences of data breaches, including exposure of private financial account information and social security numbers; industry standards for data security; and Defendants' representations regarding its security features to protect PII.

---

[2] Ben Barnow and Charles E. Schaffer are defined as "Class Counsel" in the Settlement Agreement and are referred to as "Class Counsel" throughout this memorandum.

Barnow Decl., ¶ 4; Schaffer Decl., ¶ 4. Class Counsel also requested and received informal discovery from Defendants, including information regarding how the Data Incident occurred, Defendants' response to the Data Incident, and information relating to the PII impacted in the Data Incident. Barnow Decl., ¶ 5; Schaffer Decl., ¶ 5.

The full-day mediation took place on September 19, 2023. Barnow Decl., ¶ 6; Schaffer Decl., ¶ 6. The negotiations, while professional, were adversarial and conducted at arm's length. While the parties made substantial progress during the mediation, no settlement was reached at the mediation. Barnow Decl., ¶ 6; Schaffer Decl., ¶ 6. The parties continued to communicate in the days that followed the mediation, and eventually the parties were able to reach an agreement in principle on October 2, 2023. Barnow Decl., ¶ 7; Schaffer Decl., ¶ 7. This settlement is the product of hard-fought, arm's length negotiations. Barnow Decl., ¶ 7; Schaffer Decl., ¶ 7.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, sets forth the parties' agreed-upon exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members.

### A.  Certification of the Settlement Class

Under the Settlement Agreement, the Parties agree to the certification of the following Settlement Class:

> All persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023. Guardian's, Actimize's, and Webster Bank's officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

¶ 16kk.[3]

## B.  Relief for the Settlement Class Members

The Settlement Agreement provides that Defendants will establish a Settlement Fund in the amount of $1,430,207.50, which will be exhausted to pay all Claims of Eligible Claimants, as well as any Attorneys' Fees, Costs, Service Awards, and Settlement Administration Costs that are approved by the Court. § IV.

Settlement Class Members must timely submit a valid Claim Form in order to receive a Settlement benefit. ¶ 29. Settlement Class Members may elect to file a claim for either 1) reimbursement of certain losses and Credit Monitoring services; or 2) a cash payment. ¶ 29.

### 1.    Reimbursement/Credit Monitoring Claims.

Settlement Class Members who submit a Claim for Reimbursement/Credit Monitoring can seek reimbursement for each of 1) certain ordinary losses; 2) lost time; and 3) two years of 3 bureau credit monitoring. ¶ 30.

*Ordinary Expenses*: Settlement Class Members submitting a claim for ordinary losses may claim up to $200.00 by submitting a valid and timely claim form and reasonable supporting documentation for ordinary losses demonstrably incurred, more likely than not, as a result of the Data Incident. ¶ 30(a). Ordinary losses covered by the Settlement include, *inter alia*, documented bank fees, phone charges, postage, and gasoline for local travel that have not been reimbursed by insurance or a third party. ¶ 30(a)(i). Also covered are fees for credit reports, credit monitoring, and other identity theft insurance product purchased between July 5, 2022, and the date of the close of the Claims Period that were incurred as a result of the Data Incident and not already paid for or reimbursed by a third party. ¶ 30(a)(ii). All claims for reimbursement of costs must be reasonably

---

[3] References to "§ __" or "¶ __" refer to the corresponding sections and paragraphs of the Settlement Agreement.

described and supported by an attestation under penalty of perjury, which will be a part of the claim form. ¶ 30(a).

*Compensation for Lost Time*: Settlement Class Members may claim up to 4 hours of lost time, at $25 an hour, if at least one-half hour of documented time was spent dealing with the Data Incident. ¶ 30(b). All such lost time must be reasonably described and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Incident. ¶ 30(b).

*Compensation for Extraordinary Expenses.* Settlement Class Members may submit claims for up to $5,000 in compensation by submitting a valid and timely claim for monetary loss arising from identity theft or other fraud perpetuated against the Settlement Class Member if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not the result of the Data Incident; (iii) the loss is not already covered by the "Compensation for Ordinary Losses" category; and (iv) the Settlement Class Member made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance and other available insurance. ¶ 30(c). Claims under this category must be supported by an attestation under penalty of perjury and documentation substantiating the full extent of the amount claimed and will be subject to heightened scrutiny. ¶ 30(c).

*Credit Monitoring*. Settlement Class Members may elect to submit a claim for 24 months of 3 bureau credit and identity theft monitoring. ¶ 30(d). The credit and identity theft monitoring will feature: (i) real time monitoring of the credit file at all three major credit bureaus; (ii) identity theft insurance (no deductible) of $1,000,000; and (iii) access to fraud resolution agents to help resolve identity thefts. ¶ 30(d).

2.   <u>Cash Compensation.</u>

In lieu of reimbursement/credit monitoring, Settlement Class Members may file a claim for either a Tier 1 or Tier 2 Alternative Cash Payment, depending on whether their Social Security number was accessed in the Data Incident. ¶ 31. The amount of Tier 1 and Tier 2 cash payments will be determined on a pro rata basis. ¶ 31.

*Tier 1 Alternative Cash Payment.* SSN Settlement Class Members (of which there are approximately 51,870)[4] are eligible for a Tier 1 Alternative Cash Payment. Tier 1 Alternative Cash Payments shall be two times (2x) the amount of a Tier 2 Alternative Cash Payment. ¶ 31(a). Any Tier 2 Alternative Cash Payment claim submitted by an SSN Settlement Class Member shall be deemed a claim for a Tier 1 Alternative Cash Payment. ¶ 31(a).

*Tier 2 Alternative Cash Payment.* Settlement Class Members whose Social Security numbers were not involved in the Data Incident are eligible to receive a Tier 2 Alternative Cash Payment. ¶ 31(b). Tier 2 Alternative Cash Payments shall be one-half the amount of Tier 1 Alternative Cash Payments. ¶ 31(b).

3.   <u>Business Practice Changes</u>

Each Defendant must implement certain data security measures for a period of four years after the Settlement receives final approval by the Court. ¶ 32. These measures are set forth in more detail in the Settlement Agreement but include, *inter alia*, taking measures to improve security to prevent future data breaches, mandatory cyber security training for employees, implementation of a third-party vendor risk management program, dark web monitoring, and annual reviews of all data security policies to ensure that all data security policies are being followed and consider whether any updates are needed to meet industry best practices. ¶ 32.

---

[4] *See* Barnow Decl., ¶ 8; Schaffer Decl., ¶ 8.

### C.  Released Class Claims

Each Settlement Class Member who is not an Opt-Out Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation. ¶ 96.

### D.  Attorneys' Fee, Costs, Expenses, and Service Awards

Class Counsel will file applications with the Court for the requested Service Awards and attorneys' fees, costs, and expenses and a motion in support of the final approval, at least fourteen days prior to the Objection Deadline. ¶ 76. In that motion, Class Counsel will request the Court approve an award of attorneys' fees not to exceed $476,735.83 (one-third of the Settlement Fund), and reasonable costs and expenses incurred in prosecuting the litigation. ¶ 74. The Parties did not discuss payment of attorneys' fees, costs, and expenses until after they agreed on all material terms of relief to the Settlement Class. ¶ 74.

The motion will also request the Court approve Service Awards of $1,000 each for the Class Representatives (or $10,000 in total) in recognition of the Class Representatives' efforts in the litigation and commitment on behalf of the Settlement Class. ¶ 75.

### E.  Settlement Administrator and the Notice Plan

All Notice and Settlement Administration Costs will be paid from the Settlement Fund. ¶ 33. The Parties agree to solicit competitive bids for settlement administration. ¶ 34. Within seven days of the entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with the names and last-known addresses for the Settlement Class Members (the "Class List"). ¶ 51. Within twenty-one days following entry of the Preliminary Approval Order ("Notice Date"), the Settlement Administrator will mail the Postcard Notice or SSN Postcard Notice to all Settlement Class Members by first class United States mail. ¶ 52. The Settlement Administrator will perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing. Settlement Class Members will have sixty days from the date the notice is mailed to opt out of the Settlement Class or object to the Settlement. ¶ 35. The Settlement Administrator will also provide notice via publication if necessary and to the extent such notice is deemed appropriate by the Parties in consultation with the Settlement Administrator in order to provide the best notice practicable under the circumstances. ¶ 36.

Each member of the Settlement Class will have the right to request exclusion from the Settlement Class and not participate in the Settlement Agreement. ¶ 61. For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature; and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class and from the Settlement. ¶ 63. A request for exclusion that does not comply with all of the foregoing, that is not postmarked by the Opt-Out Deadline, or that is sent to an address other than that set forth in the Short-Form Notices shall be invalid. ¶ 65.

Any Settlement Class Member who wishes to object to the proposed Settlement must file with the Court and serve a written objection to the Settlement to Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel. ¶ 68. Each Objection must (i) include the case name and number; (ii) set forth the Settlement Class Member's full name, current address, and telephone number; (iii) contain the Settlement Class Member's original signature; (iv) state that the Settlement Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; and (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position. ¶ 69. Objections must be filed with the Court and served no later than sixty days after the Notice Date (the "Objection Deadline"). ¶ 70.

No later than twenty-one days following entry of the Preliminary Approval Order, the Settlement Administrator will create a dedicated Settlement Website. ¶ 56. The Settlement Administrator shall make the CAC, Postcard Notice, SSN Postcard Notice, Long-Form Notice, Claim Form,  Settlement Agreement, and other relevant settlement and court documents available on the Settlement Website. ¶ 56. The Settlement Website will be maintained from the Notice Date until sixty days after the Claims Deadline has passed. ¶ 58.

The Settlement Administrator will also administer the claims process in accordance with the terms of the Settlement. ¶ 38. To make a claim, a Settlement Class Member must submit a valid, timely, and sworn Claim Form. A Claim Form may be submitted online at the Settlement Website or by U.S. mail and must be postmarked no later than the Claim Deadline. ¶ 39. The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted for validity, timeliness, and completeness. ¶ 40. If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete or

inadequately supported Claim Form, the Settlement Administrator will give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member will have twenty-one days from the date of the written notice to cure the deficiencies. ¶ 41.

Fourteen Days after the Effective Date, the Settlement Administrator will begin paying claims using the following distribution procedure. The Settlement Administrator will first apply the Net Settlement Fund to pay for credit monitoring claims. ¶ 44(a). The Settlement Administrator will next pay valid claims for Ordinary Losses, Lost Time, and Extraordinary Losses. ¶ 44(a). The amount of the Net Settlement Fund remaining after all payments for Credit Monitoring, Ordinary Losses, Lost Time, and Extraordinary Losses will be used to pay Cash Compensation claims on a pro rata basis, with the amount of each Cash Compensation payment being calculated by dividing the Post-Loss Net Settlement Fund by the number of valid claims for Cash Compensation. ¶ 44(b). In making this calculation, each Tier 1 Alternative Cash Payment claim will be counted as two claims, while each Tier 2 Alternative Cash Payment claim will be counted as one claim. ¶ 44(b). Tier 1 Alternative Cash Payment will be exactly two times the amount of each Tier 2 Alternative Cash Payment. ¶ 44(b).

To the extent any monies remain in the Net Settlement Fund more than one hundred twenty days after the distribution of Claim Payments to the Claimants, a subsequent payment will be evenly made to all Claimants who cashed or deposited their initial Claim Payments, provided that the average payment amount is equal to or greater than three dollars. ¶ 46 The distribution of this remaining Net Settlement Fund shall continue until the average payment amount in a distribution is less than three dollars, whereupon the amount remaining in the Net Settlement Fund, if any, will be distributed to the Non-Profit Residual Recipient. ¶ 46. Should any amount remain in the Net

Settlement Fund following the redistributions, the parties will petition and obtain approval from the Court as to the Non-Profit Residual Recipient and to distribute the remaining funds to it. ¶ 46.

IV.     <u>**ARGUMENT**</u>

Class Counsel have worked diligently to reach a fair, reasonable, and adequate settlement. Plaintiffs and Class Counsel believe their claims are strong and are optimistic about obtaining class certification and succeeding on the merits. However, significant time, expense, and risk attend the continued prosecution of the claims through trial and any appeals. In negotiating and evaluating the Settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the risks and delays inherent in complex class action litigation. Class Counsel believe the proposed Settlement provides significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class.

A.  **Legal Standard**

Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for any class-wide resolution of claims. *See* Fed. R. Civ. P. 23(e). It is well-established in the Third Circuit that the settlement of class action litigation is favored and encouraged. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("Settlement [a]greements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). Pursuant to Rule 23(e)(1)(B), the parties must "show[] that the [C]ourt will likely be able to: (i) approve the [settlement] proposal under Rule 23(e)(2); and, (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

**B.  The Court Should Certify the Class for Purposes of the Proposed Settlement**

The propriety of certifying a class solely for purposes of settlement is well established in the Third Circuit. *See, e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) ("[P]reliminary analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation."); *In re Pet Food Prods. Liab. Litig.*, MDL No. 1850, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23."). Nevertheless, a settlement class, like other certified classes, must satisfy all of the requirements of Rules 23(a) and (b), though the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As demonstrated below, the proposed Settlement Class satisfies these requirements.

1.    The Proposed Class Satisfies Rule 23(a).

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites for a class and requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265-66 (3d Cir. 2021) (citations omitted).

a.    *Numerosity*

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In the Third Circuit, this prong is generally satisfied where "'the named plaintiff demonstrates the potential number of plaintiffs exceeds 40[.]'" *In re*

*Modafinil Antitrust Litigation*, 837 F.3d 238, 249-50 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

      Here, there are approximately 197,270 individuals within the Settlement Class definition. *See* Barnow Decl., ¶ 8; Schaffer Decl., ¶ 8. Because joinder of all of these persons would be impracticable, the Court will have no trouble finding the Settlement Class is sufficiently numerous. *See, e.g.*, *Modafinil*, 837 F.3d at 250 (noting that "[l]eading treatises have collected cases and recognized the general rule that . . . '[a] class of 41 or more is usually sufficiently numerous '") (citations omitted) (second alteration in original).

      b.    *Commonality*

      Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). This commonality requirement is satisfied "if the Named Plaintiffs share at least one question of law fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do."); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 381 (3d Cir. 2013) ("That burden is not onerous. It does, however, require an affirmative showing that the class members share a common question of law or fact.") (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011)).

      Here, Plaintiffs allege that Defendants failed to take adequate steps to protect their PII. As alleged, Defendants' actions, or failure to act, is a question of fact common to all Settlement Class Members. *See In re Remicade Antitrust Litig.*, 2022 WL 3042766, at *5 (E.D. Pa. Aug. 2, 2022) ("Commonality is met in this case because each Class Member's claim depends on whether Defendants unlawfully engaged in anticompetitive behavior.") (citations omitted); *Roofer's Pension Fund v. Paper*, 333 F.R.D. 66, 75 (D.N.J. 2019) (finding commonality requirement met where "[t]he class claims are predicated upon the same underlying misrepresentations and

commissions by Defendants, presenting common issues of both fact and law arising thereunder."). This case involves further common legal and factual questions arising from Defendants' course of conduct, including but not limited to: (1) whether Defendants violated applicable state statutes with respect to protecting PII; (2) whether Defendants' actions or failures to act violated the common law; and (3) the appropriate measure of class damages.

Based on the foregoing, the commonality requirement of Rule 23(a) is satisfied. *See, e.g.*, *Smith v. Merck & Co., Inc.*, 2019 WL 3281609, *3 (D.N.J. July 19, 2019) ("In resolving the merits of [p]laintiffs 'claims, therefore, the focus is on [d]efendants 'salary grade structure and the resulting harm is caused, and not factual differences among individual class members. The Court, accordingly, finds that the proposed class satisfies the commonality and predominance requirements of Rules 23(a)(2) and 23(B)(3), respectively.").

c.    *Typicality and Adequacy*

"The adequacy and typicality analyses under Rules 23(a)(3) and 23(a)(4), often merge and may, therefore, be discussed together." *Smith*, 2019 WL 3281609 at *3; *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ("The Supreme Court has noted that the typicality and adequacy inquires often 'tend to merge 'because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (quoting *Amchem*, 521 U.S. at 626 n.20).

The typicality requirement set forth in Rule 23(a)(3) requires that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. "'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where this is a strong similarity of legal theories 'or where the claim arises from the same practice or course of conduct." *In re Prudential Ins. Co. Am. Sales*

*Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)); *see also Russell*, 15 F.4th at 271 n.4 ("We have 'set a low threshold for typicality.'") (quoting *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016)).

　　　　With regard to adequacy, Rule 23(a)(4) requires that: "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry 'serves to uncover conflicts of interest between the named parties and the class they seek to represent' [and] '[i]t assures that the named plaintiff's claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.'" *Beck*, 457 F.3d at 296 (quoting *Amchem*, 521 U.S. at 591; *Baby Neal*, 43 F.3d at 55). This predicate to class certification mandates two steps of inquiry "designed to ensure that absentees 'interests are fully pursued." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) (quotation marks omitted). The first step of inquiry "tests the qualifications of the counsel to represent the class," while the second "seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 602. "When examining settlement classes, [the Third Circuit has] emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re NFL Players*, 821 F.3d at 431 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995)). "The burden to prove representation is not adequate rests with the party challenging the class representation." *Buzzaro v. Ocean City*, 2009 WL 1617887, at *14 (D.N.J. June 9, 2009).

　　　　Here, as is shown by their appointment, Class Counsel have extensive experience in complex litigation and class action proceedings throughout the United States. As previously

discussed, the Settlement was reached after arm's length negotiations with the assistance of a neutral third-party mediator, the Honorable Stephen Orlofsky (Ret.), and following vigorous pursuit by Counsel. Class Counsel are therefore more than adequate for purposes of certification herein.

As for the second step of the inquiry, "[t]he 'linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *In re NFL Players*, 821 F.3d at 431 (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)). Here, the claims of all Plaintiffs and Settlement Class Members arise from Defendants' alleged failure to protect PII properly. This alleged failure affected all Plaintiffs and Settlement Class Members in the same way. Accordingly, the interests of Settlement Class Members and Plaintiffs are entirely aligned because they arise from the same course of conduct by Defendants and rely upon identical legal theories. Nor are Plaintiffs subject to any unique defenses. *See In re NFL Players*, 821 F.3d at 431 (affirming the district court's conclusion that "the incentives of class members were aligned because they 'allegedly were injured by the same scheme . . . .'").

Plaintiffs therefore respectfully submit the Court should find the typicality and adequacy requirements are met herein. *See, e.g.*, *In re Remicade.*, 2022 WL 3042766, at *7 ("Here, because the Named Plaintiffs 'and Class Members 'claims arise out of the same conduct and are based on the same legal theories[] . . . the Court concludes the typicality factor is satisfied.").

        2.    The Proposed Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) authorizes class certification if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies this standard.

a.    *Predominance*

"[T]he predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Sullivan*, 667 F.3d at 297 (quoting Rubenstein, Newberg on Class Actions § 4:25 (4th ed. 2010)). The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 597. The rule, however, "does not require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, predominance is determined by whether: "the efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members"). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. "The Third Circuit has counseled that courts should be 'more inclined to find the predominance test met in the settlement context.'" *In re Remicade*, 2022 WL 3042766, at *7 (quoting *In re NFL Players*, 821 F.3d at 434).

Here, the predominance requirement under Rule 23(b) is satisfied for many of the same reasons that the commonality requirement of Rule 23(a) is satisfied. Defendants' alleged actions or inactions with respect to protecting PII affected all members of the Settlement Class, and all Settlement Class Members were harmed as a result of Defendants' alleged conduct. The focus of any proof is on Defendants' actions and failure to protect Plaintiffs' and Settlement Class Members' PII.

- 18 -

b.      *Superiority*

The last remaining criterion for certification is that the Court must be likely to find that: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Prudential*, 148 F.3d at 316. "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any ligation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the likely difficulties in managing a class action." *Id*. Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated . . . ." *Amchem*, 521 U.S. at 615.

Similar to the Court's observations in *Smith*, here, "[t]he Settlement Class contains approximately [197,270] members, 'and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals[, and] . . . would burden the Court." *Smith*, 2019 WL 3281609, at *4 (quoting *Alfaro v. First Advantage Lns Screening Solutions, Inc*., 2017 WL 3567974, at *4 (D.N.J. Aug. 16, 2017)). Accordingly, a class action is superior to other available options for fair and efficient adjudication of the Settlement Class's Claims. *See, e.g.*, *Alfaro*, 2017 WL 3567974, at *4; *Varacallo*, 226 F.R.D. at 233 (finding class satisfied the superiority requirement where it was "unlikely that individual Class Members would have the resources to pursue successful litigation on their own.").

**C.  The Settlement Satisfies the Requirements for Preliminary Approval**

Approval of a class action settlement requires that the Court find that the settlement is "fair reasonable and adequate after considering whether:

(A)     The class representatives and class counsel have adequately represented the class;

(B)     The proposal was negotiated at arm's length;

(C)     The relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3)

(D)     the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

These factors substantially overlap with the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) and *Prudential*, 148 F.3d at 323-24, which the Third Circuit continues to apply when evaluating proposed class action settlements. *See Kanefsky v. Honeywell Int'l Inc*, 2022 WL 1320827, at *4, n.3 (D.N.J. May 3, 2022) ("Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors.").

The nine *Girsh* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 531 F.2d at 157. The additional discretionary *Prudential* factors to be considered, when appropriate and relevant, are: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class

or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential*, 148 F.3d at 323.

For the reasons set forth below, the proposed Settlement is fair, reasonable, and adequate, and satisfies the *Girsh* factors and the relevant *Prudential* factors.

1.   <u>The complexity, expense, and likely duration of the litigation.</u>

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re NFL Players*, 821 F.3d at 437. "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Dartell v. Tibet Pharms., Inc*., 2017 WL 2815073, at *4 (D.N.J. June 29, 2017).

Here, the costs, complexity, and likely duration of this case strongly favor settlement. Class action litigation is inherently complex and costly. But this action is even more complex as it involves thorny issues regarding the emerging field of data breach liability. There would undoubtedly be a contested class certification motion. Defendants would likely argue that damages could not be calculated on a class-wide basis, that differences in state law would preclude a multi-state class, and that the question of whether individual injuries were fairly traceable to the Defendants would predominate over class-wide issues. Class issues involving damages would likely generate expert discovery and Daubert motions as well. Although Plaintiffs are confident in their ultimate success in certifying a class, *see In re Target Corp. Customer Data Sec. Breach Litigation*, 309 F.R.D. 482 (D. Minn. 2015) (certifying class in data breach case), *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) (same), a positive ruling would no doubt be challenged by a decertification motion or appeal.

Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about reasonable steps that a business must take to protect data, whether the steps taken before and after the Data Incident were reasonable, and the reliability of competing damages models, as well as the cost attributable to a data breach and the time spent rectifying any exposure of personal data. Each step towards trial would be subject to Defendants' vigorous opposition and possible interlocutory appeal. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources.

Moreover, Defendants would be expected to offer defenses at trial concerning the applicability of various statutory and common law claims, including whether Settlement Class Members were injured and had standing, whether Defendants had a duty to preserve the security of class members' data, and whether any injury suffered by Settlement Class Members would be compensable under Plaintiffs' legal theories. Although Plaintiffs believe they would ultimately prevail, litigation of this matter through trial would be complex, costly, and time-consuming. The Settlement eliminates the costs and risks associated with further litigation. It also obtains for the Settlement Class prompt compensation for prior injuries. For all of these reasons, this factor weighs strongly in favor of preliminary approval.

     2. The reaction of the class to the settlement.

It is premature to address the reaction of the Settlement Class at the preliminary approval stage where no data is yet available.

     3. The stage of the proceedings and the amount of discovery completed.

The purpose of the third factor is to determine "the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). "[C]ourts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id*. However, "[t]he fact that a case has not proceeded through

discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc*., 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig*., 900 F. Supp. 2d 467, 482 (D.N.J. 2012).

Here, in addition to conducting extensive legal research into the merits of the case (and likelihood of protracted litigation), the parties have engaged in informal settlement discovery, exchanged mediation briefs, and mediated before the Honorable Stephen Orlofsky (Ret.). This factor therefore weighs in favor of approval of the Settlement.

In this case, the parties reached the Settlement prior to engaging in formal discovery. However, the Plaintiffs engaged in a preliminary investigation of the case, as evidenced by their consolidated complaint, and obtained informal discovery from Defendants prior to settlement discussions commencing. Thus, while discovery was not advanced here, the parties had an adequate appreciation of the merits of the case. Accordingly, this factor does not weigh against final approval. *Cf. Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though the case was still in the early stages of discovery). *See also McLennan v. LG Elecs. USA, Inc*., 2012 WL 686020, at *6 (D.N.J. Mar. 2, 2012).

4.    The risks of establishing liability and damages.

The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the benefits of an immediate settlement against the likelihood of success at trial and the resulting damage award. *In re Prudential*, 148 F.3d at 319. In other words, these factors attempt "to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238. Both factors weigh in favor of approval in this case.

- 23 -

Here, Plaintiffs face significant hurdles in proving their cases. Although Plaintiffs believe that Defendants owed a duty to protect the security of Plaintiffs' private information and breached that duty by failing to implement reasonable security measures, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" regarding the calculations of damages. Even if Plaintiffs were successful at trial, Defendants would likely appeal, which would further delay resolution of the suit and impede finality. Accordingly, given the real and extensive risks involved in Plaintiffs' cases, these two factors weigh heavily in favor of approval of the settlement.

5.   The risks of maintaining the class action through the trial.

"'[T]he prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action.'" *In re Warfarin*, 391 F.3d at 537 (quoting *GMC Pick–Up Truck*, 55 F.3d at 817). Thus, "this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Id*.

It is far from certain that Plaintiffs' class would survive the "rigorous analysis" of certification. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). For instance, the Court could find that the class is too broad to comport with the predominance requirement of Rule 23(b). As discussed above, in addition to the challenges inherent in certifying a potential class spanning multiple states, Plaintiffs must proffer a suitable mechanism for calculating class-wide damages. While Plaintiffs believe they could establish the existence of such a mechanism to the Court's satisfaction, this Settlement eliminates the unavoidable risk that they cannot. Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "There will always be a 'risk' or possibility of decertification, and consequently the

court can always claim this factor weighs in favor of settlement." *In re Prudential*, 148 F.3d at 321. Given the risks, this factor weighs in favor of preliminary approval.

        6.    <u>The ability of the defendants to withstand a greater judgment.</u>

The Third Circuit has explained that the mere fact that a Defendant "could afford to pay more" in a judgment than it agrees to pay in a settlement "does not mean that [Defendant is] obligated to pay any more than what [the] class members are entitled to under the theory of liability that existed at the time the settlement was reached." *In re Warfarin*, 391 F.3d at 538. Although there is no indication that Defendants have serious financial problems, "to withhold approval of a settlement of this size because the defendants could withstand a greater judgment would make little sense." *McGee v. Cont'l Tire N. Am., Inc.*, 2009 WL 539893, at *6 (D.N.J. Mar. 4, 2009). "Regardless, the Court of Appeals has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement." *O'Brien v. Brain Rsch. Labs, LLC*, 2012 WL 3242365, at *19 (D.N.J. Aug. 9, 2012).

At most, this factor is neutral. *See In re Warfarin*, 391 F.3d at 538 ("Here, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement. We see no error here.").

        7.    <u>The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation.</u>

The eighth and ninth factors concerning the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation also weigh in favor of settlement. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage

recovery to plaintiff in light of all the risks considered under Girsh." *McGee*, 2009 WL 539893, at *6 (quoting *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000)).

Here, the relief that the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The Settlement Agreement, which amounts to approximately $7.25 per Settlement Class Member, exceeds or is in line with many recent class action settlement agreements relating to financial data breaches. *See, e.g.*, *McPherson v. American Bank Systems, Inc.*, No. 20-cv-1307-G (W.D. Okl.), ECF Nos. 54, 73 (finally approving financial data breach settlement with a $1,700,000 fund for class of 554,000 persons ($3.07 per class member)); *In re Morgan Stanley Data Sec. Litig.*, No. 1:20-cv-05914-AT (S.D.N.Y), ECF No. 156 (finally approving financial data breach settlement with a $60,000,000 fund for a class of approximately 15,400,000 persons (~$3.90 per class member)); *Keefer v. Fulton Bank, N.A.*, No. 1:23-md-03056, ECF No. 106 (finally approving settlement making available $750,000 in benefits for approximately 111,663 persons ($6.72 per class member)). The gravamen of the litigation is that Defendants violated their duty to Settlement Class Members by failing to undertake reasonable security measures, leading to the potential exposure of their personal and highly sensitive financial data. The remediation measures agreed to be undertaken by Defendants as part of the Settlement, which are not considered in the per capita recovery amount discussed above, will minimize the risk of further harm in the future. Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to economic damages incurred.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure of resources by both parties and

the Court. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness."

8.    Relevant *Prudential* Factors.

In this instance, the relevant *Prudential* factors are whether class members may opt out of the Settlement and whether the procedure for processing individual claims is fair and reasonable.[5] Here, Settlement Class Members are provided the right to opt out of the Settlement Class, and the claims procedure set forth in the Settlement is fair and reasonable.

**D.  The Court Should Approve the Proposed Notice Plan**

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." In addition, notice of the settlement must be the best that is "practicable under the circumstances" and "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2). The form and manner

---

[5] The reasonableness of Plaintiffs' request for attorneys' fees is another potentially relevant *Prudential* factor. However, it can be better addressed after Plaintiffs file a motion for attorneys' fees along with their motion for final settlement approval. *See also* ¶ 74 ("The Parties agree that the Court's approval or denial of … attorneys' fees … are to be considered by the Court separately from final approval, reasonableness, and adequacy of the Settlement …. Any reduction to the Service Award or award of attorneys' fees, costs, and expenses shall not operate to terminate or cancel this Settlement Agreement."). Regardless, Plaintiffs' requested fee percentage – 33.33% -- is routinely approved by courts as reasonable. *See, e.g.*, *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *9 (D.N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method").

of the notice must satisfy the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018).

Here, the proposed notice plan satisfies the requirements of Fed. R. Civ. P. 23 and due process. The notices to be provided to Settlement Class Members will clearly and concisely summarize the case, the Settlement, and the legal rights of the Settlement Class Members. *See* Declaration of Cameron R. Azari, attached hereto as Exhibit 4 ("Azari Decl."), ¶ 22. Such notices "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013). The proposed notice plan will "conform to all aspects of Federal Rule of Civil Procedure, Rule 23 regarding notice . . . ." Azari Decl., ¶ 32. The Settlement Administrator estimates that the individual notice will reach at least 90% of the identified Settlement Class. *See* Azari Decl., ¶ 19.

Moreover, the manner in which Settlement Class Members are to be notified—direct U.S. mail—is the best practicable under the circumstances. Providing notice directly to the members of the Class by regular U.S. mail is the gold standard for notice. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (holding that mailing direct notice to class members is the "best notice practicable"); Azari Decl., ¶ 30. In addition, the Settlement Administrator will establish a settlement website that will contain relevant information pertaining to the Settlement Agreement and will allow Settlement Class Members to submit online claims. Azari Decl., ¶ 25.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs as the class representatives and Ben Barnow, Charles E. Schaffer, and their respective firms as Class Counsel; (2) preliminarily approve the Settlement

Agreement; (3) approve the Notice Plan; and (4) set a date and time for the Final Approval Hearing.

A proposed Order granting this Motion is attached as Exhibit 5 to Plaintiffs' Motion.

Dated: November 3, 2023                    Respectfully submitted,

                                           */s/ Adam Pollock*
                                           Adam Pollock
                                           **POLLOCK COHEN LLP**
                                           111 Broadway, Suite 1804
                                           New York, NY 10006
                                           (212) 337-5361
                                           adam@pollockcohen.com

                                           *Local Counsel for Plaintiffs Mark S. Holden and*
                                           *Richard Andisio*

                                           Ben Barnow*
                                           **BARNOW AND ASSOCIATES, P.C.**
                                           205 West Randolph Street, Ste. 1630
                                           Chicago, IL 60606
                                           (312) 621-2000
                                           b.barnow@barnowlaw.com

                                           Charles E. Schaffer*
                                           **LEVIN SEDRAN & BERMAN**
                                           510 Walnut Street, Suite 500
                                           Philadelphia, PA 19106
                                           (215) 592-1500
                                           cschaffer@lfsblaw.com

                                           *Interim Co-Lead Class Counsel*

                                           *admitted pro hac vice