# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK S. HOLDEN, RICHARD ANDISIO, EDWARD MARSHALL, ANN MARIE MARSHALL, ARTHUR CHRISTIANI, JOHNIELLE DWYER, PAWEL KRZYKOWSKI, MARIOLA KRZYNOWEK, JAMES HOWE, and CINDY A. PEREIRA, individually, and on behalf of all others similarly situated, | Civil Action No. 2:23-cv-2115-WJM-LDW |
| Plaintiffs, | CLASS ACTION |
| v. | |
| GUARDIAN ANALYTICS, INC., ACTIMIZE INC., and WEBSTER BANK, N.A., | |
| Defendants. | |

This Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and between Guardian Analytics, Inc. ("Guardian"), Actimize Inc. ("Actimize"), Webster Bank, N.A. ("Webster Bank") (together, "Defendants"), and Plaintiffs Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira ("Plaintiffs" or "Class Representatives"), both individually and on behalf of the Settlement Class, in the case of *Holden, et al. v. Guardian Analytics, Inc., et al.*, No 23-cv-2115, currently pending in the District of New Jersey (the "Litigation"). Guardian, Actimize, Webster Bank, and Plaintiffs are each referred to as a "Party" and are collectively referred to herein as the "Parties."

## I.  RECITALS

1.      Guardian Analytics, Inc. is a corporation that was formed under the laws of Delaware. Guardian Analytics' principal place of business is located at 2465 Latham Street, Suite 200, Mountain View, CA, 94040.

2.      Actimize Inc. is a corporation that was formed under the laws of Delaware. Actimize's principal place of business is located at 221 River St., Hoboken, NJ 07030. Prior to the Litigation and events giving rise to it, Guardian was acquired by Actimize and was later merged into Actimize.  Any right or obligation of Guardian under this Settlement Agreement shall be treated as a right or obligation of Actimize.  References to Guardian herein shall mean Guardian as acquired by and merged into Actimize.

3.      Webster Bank, N.A. is a national bank that has its place of business in Connecticut. Webster Bank is headquartered at 200 Elm St., Stamford, CT 06902.

4.      This litigation arises out of a data security incident, defined below as a "Data Incident," wherein Plaintiffs allege that unauthorized third parties accessed Guardian's computer systems and data, potentially resulting in the third party's access to personal information belonging to Plaintiffs and members of the Settlement Class. Guardian provides fraud detection services to Webster Bank. Webster Bank provides certain personal information of Plaintiffs and Settlement Class Members to Guardian to provide these services. Between November 27, 2022 and January 22, 2023, unauthorized individuals had access to Guardian's network systems and acquired or may have had access to the personal data of Plaintiffs and Settlement Class Members ("Data Incident").

5.      In response, on April 14, 2023, Plaintiffs Holden and Andisio filed the first complaint against Defendants related to the Data Breach. Five other related complaints were filed in the District of New Jersey in the ensuing weeks: *Marshall, et al. v. Guardian Analytics, et al.*,

No. 23-2156 (filed April 18, 2023), *Christiani v. Guardian Analytics, et al*., No. 23-2158 (filed April 18, 2023), *Dwyer v. Guardian Analytics, et al*., No. 23-2320 (filed April 27, 2023), *Krzykowski, et al. v. Guardian Analytics, et al*., No. 23-2322 (filed April 27, 2023), and *Pereira v. Guardian Analytics, et al*., No. 23-2431 (filed May 3, 2023).

6.      On May 25, 2023, Plaintiffs filed a Motion to Consolidate and Appoint Interim Co-Lead Counsel, which was granted on July 25, 2023. The Court appointed Ben Barnow and Charles E. Schaffer (referred to herein as "Class Counsel") as Interim Co-Lead Counsel. Plaintiffs then filed a Consolidated Amended Class Action Complaint ("CAC") on August 24, 2023. Plaintiffs, individually and on behalf of other members of the Class, asserted claims for (i) negligence; (ii) negligence per se; (iii) breach of implied contract; (iv) breach of fiduciary duty (v) unjust enrichment; (vi) declaratory relief; and (vii) violations of the Connecticut Unfair Trade Practices Act Conn. Gen. Stat. §§ 42-110a, *et seq*. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

7.      Defendants deny all claims asserted against them in the Litigation, deny all allegations of wrongdoing and liability, and deny all material allegations of the CAC against them regarding the Data Incident.

8.      Plaintiffs and Class Counsel believe that the legal claims asserted in the Litigation have merit. Class Counsel have investigated the facts relating to the claims and defenses alleged and the underlying events in the Litigation, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Litigation, and have conducted a thorough assessment of the strengths and weaknesses of the respective positions.

9.      The Parties' desire to settle the Litigation and all claims arising out of or related to the allegations or subject matter of the CAC and Litigation on the terms and conditions set forth

herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Litigation.

10.     Counsel for the Parties, highly experienced in data breach litigation and class actions, have engaged in extensive arm's-length negotiations concerning a possible settlement of the claims asserted in the Litigation.

11.     On September 19, 2023, the parties engaged in a full-day mediation session with the Hon. Stephen Orlofsky (Ret.) of Blank Rome LLP. Judge Orlofsky is a nationally-regarded mediator with substantial experience in handling complex litigation and class action mediations. A resolution was not reached during mediation, but the Parties were able to narrow the issues. Negotiations then continued over the next several weeks, and the Parties were able to reach a settlement in principle with all Defendants for a non-reversionary common fund of $1,430,207.50. The full terms of the settlement are memorialized in this Settlement Agreement.

12.     Plaintiffs and Class Counsel, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Litigation through the various phases of litigation (including potentially trial and appeal), the risks and costs associated with further prosecution of the Litigation, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that a settlement with Defendants on the terms set forth herein is fair and reasonable and in the best interest of Plaintiffs and the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.

13.     Defendants and their counsel have also concluded that the settlement set forth herein is fair and reasonable and in the best interests of Defendants.

14.     The Parties agree and understand that neither this Settlement Agreement, nor the Settlement it represents, shall be construed as an admission by Defendants of any wrongdoing whatsoever, including any admission of a violation of any statute or law or of liability on the claims or allegations, including class certification, in this Litigation or any other similar claims in other proceedings.

15.     The Parties, by and through their respective duly authorized counsel of record, and intending to be legally bound hereby, agree that all claims against Defendants arising out of or related to the allegations or subject matter of the CAC and Litigation, as set forth in the Release in Section XV, shall be settled, compromised, and dismissed, on the merits and with prejudice, upon the following terms and conditions.

## II.     DEFINITIONS

16.     As used herein and in the related documents attached hereto as exhibits, the following terms have the meaning specified below:

a.      "Claims Deadline" means the deadline for filing claims under the Settlement set at a date certain that is exactly ninety (90) Days from the date notice of the Settlement is mailed or otherwise provided to the Settlement Class Members.

b.      "Claim Form" means the form members of the Settlement Class must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein, and substantially in the form of Exhibit A to this Settlement Agreement. The Claim Form shall require a sworn affirmation under penalty of perjury but shall not require a notarization or any other form of verification.

c.      "Claims Period" means the period for filing claims up until a date certain no more than ninety (90) Days from the date notice is mailed or otherwise provided to the Settlement Class Members.

d.      "Claimants" shall have the meaning given in Paragraph 41, *i.e.,* all Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but cured within the 21-Day period.

e.      "Class Counsel"  means Ben Barnow of Barnow and Associates, P.C. located at 205 W. Randolph Street, Suite 1630, Chicago, Illinois 60606 and Charles E. Schaffer of Levin Sedran & Berman, LLC located at 510 Walnut Street, Suite 500, Philadelphia, PA 19106.

f.      "Class Representatives"  mean Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira.

g.      "Costs and Expenses" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, settling the Litigation, and obtaining an order of final judgment.

h.      "Court" means the United States District Court for the District of New Jersey.

i.      "Day(s)" means calendar days, but does not include the day of the act, event, or default from which the designated period of time begins to run. Further and notwithstanding the above, when computing any period of time prescribed or allowed by this Settlement Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a federal or New Jersey state legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal or New Jersey state legal holiday.

j.      "Data Incident" means the potential exposure of personal information of Plaintiffs and members of the Settlement Class as a result of a third party's unauthorized access to Guardian's computer systems on or around November 27, 2022 through January 22, 2023.

k.      "Effective Date" means the date defined in Paragraph 102 of this Settlement Agreement.

l.      "Fee Award, Costs, and Expenses" means the amount of attorneys' fees, costs, and expenses awarded by the Court to Class Counsel.

m.      "Final" with respect to a judgment or order means that all of the following have occurred: (i) the time expires for noticing any appeal; (ii) if there is an appeal or appeals, completion, in a manner that finally affirms and leaves in place the judgment or order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing *en banc*, or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

n.      "Final Approval Hearing" means the hearing to determine whether the Settlement should be given final approval and whether the applications of Class Counsel for attorneys' fees, costs, and expenses, and Service Awards should be approved.

o.      "Final Approval Order" means the order of the Court finally approving this Settlement.

p.      "Final Judgment" means the dismissal with prejudice of the claims against Guardian, Actimize, and Webster Bank in the Litigation, entered in connection with the Settlement and Final Approval Order.

q. "Guardian and Actimize's Counsel" means Christopher A. Wiech and other designated attorneys at Baker & Hostetler LLP.

r. "Litigation" means the lawsuit entitled *Holden, et al. v. Guardian Analytics, Inc., et al.*, No 23-cv-2115 currently pending in the District of New Jersey.

s. "Long-Form Notice" means the written notice substantially in the form of Exhibit B to this Settlement Agreement.

t. "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement, (ii) any taxes owed by the Settlement Fund, (iii) any Service Awards approved by the Court, and (iv) any Attorneys' Fees, Costs, and Expenses approved by the Court.

u. "Notice and Claims Administration Costs" means all costs incurred or charged by the Settlement Administrator in connection with providing notice to members of the Settlement Class and administering the Settlement. This does not include any separate costs incurred directly by Guardian, Actimize, or Webster Bank or any of Guardian, Actimize, or Webster Bank's agents or representatives in this Litigation.

v. "Notice Program" means the notice program described in Section VII.

w. "Non-Profit Residual Recipient" means a 26 U.S.C. 501(c)(3) non-profit organization agreed to by the Parties and approved by the Court.

x. "Objection Deadline" shall have the meaning set forth in Paragraph 70 or as otherwise ordered by the Court.

y. "Opt-Out Deadline" means the date certain that is exactly sixty (60) days from the date the Postcard Notice is mailed or as otherwise ordered by the Court.

8

z.     "Opt-Out Members" shall have the meaning set forth in Paragraph 63.

aa.     "Parties" means Plaintiffs, Guardian, Actimize, and Webster Bank, collectively, and a "Party" means one of Plaintiffs, Guardian, Actimize, or Webster Bank.

bb.     "Plaintiffs' Released Claims" means all claims and other matters released in and by Section XV of this Settlement Agreement.

cc.     "Postcard Notice" or "Short-Form Notice" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form of Exhibit C to this Settlement Agreement.

dd.     "Preliminary Approval Date" means the date the Preliminary Approval Order has been entered by the Court on the docket.

ee.     "Preliminary Approval Order" means the order certifying the proposed Class for settlement purposes, preliminarily approving this Settlement Agreement, approving the Notice Program, and setting a date for the Final Approval Hearing.

ff.     "Released Class Claims" means all claims and other matters released in and by Section XV of this Settlement Agreement.

gg.     "Released Persons" means Guardian, Actimize, Webster Bank, and their present and former parents, subsidiaries, divisions, departments, affiliates, employees, servants, members, providers, partners, principals, directors, shareholders, owners, predecessors, successors, assigns, and insurers, and each of the foregoing's former or present directors, trustees, officers, employees, representatives, agents, providers, consultants, advisors, attorneys, accountants, partners, vendors, customers, insurers, reinsurers, and subrogees.

hh.     "Settlement" means the settlement reflected by this Settlement Agreement.

ii.     "Settlement Administrator" means the class action settlement administrator, identified in the Motion for Preliminary Approval, that has been retained to carry out the Notice Program and administer the claims and settlement fund distribution process.

jj.     "Settlement Agreement" means this Settlement Agreement, including releases and all exhibits hereto.

kk.     "Settlement Class" means all persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023. Guardian's, Actimize's, and Webster Bank's officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

ll.     "Settlement Class Member[s]" means all persons who are members of the Settlement Class.

mm.     "Settlement Fund" means the non-reversionary sum of One Million Four Hundred Thirty Thousand Two Hundred Seven Dollars and Fifty Cents ($1,430,207.50), to be paid by Guardian as specified in this Settlement Agreement, including any interest accrued thereon after payment.

nn.     "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the

Settlement, including this Settlement Agreement, the Postcard Notice, the Long-Form Notice, and the Claim Form, among other things.

oo.    "SSN Settlement Class Members" means Settlement Class Members whose Social Security numbers were accessed in the Data Incident. For avoidance of doubt, all SSN Settlement Class Members are also Settlement Class Members.

pp.    "SSN Postcard Notice" means the written notice to be sent to SSN Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form of Exhibit D to this Settlement Agreement.

qq.    "Webster Bank's Counsel" means Joshua L. Becker of Shook, Hardy & Bacon LLP at 1230 Peachtree Street, Suite 1200, Atlanta, Georgia 30309.

## III.    CERTIFICATION OF THE SETTLEMENT CLASS

17.    For settlement purposes only, Plaintiffs will request that the Court certify the Settlement Class.

18.    Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, Defendants agree to stipulate to the certification of the Settlement Class and will not oppose Plaintiffs' request for certification. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then Defendants' stipulation will be withdrawn and deemed to be of no force or effect for any purpose in this or any other proceeding.

## IV.    THE SETTLEMENT FUND

19.    The Settlement Fund: Guardian, on behalf of all Defendants, agrees to make a payment of One Million Four Hundred Thirty Thousand Two Hundred Seven Dollars and Fifty Cents ($1,430,207.50) and deposit that payment into the Settlement Fund as follows: (i) Guardian

shall pay Two Hundred and Fifty Thousand Dollars and No Cents ($250,000.00) into the

Settlement Fund twenty-one (21) calendar days after the Court enters the Preliminary Approval

Order, which shall be available to cover Notice and Claims Administration Costs incurred prior to

entry of the Final Approval Order and Final Judgment, (ii) Guardian shall pay the balance of the

Settlement Fund, One Million One Hundred Eighty Thousand Two Hundred Seven Dollars and

Fifty Cents ($1,180,207.50), seven (7) calendar days after the Effective Date. For the avoidance

of doubt, and for purposes of this Settlement Agreement only, the total liability and payment

obligation hereunder shall not exceed One Million Four Hundred Thirty Thousand Two Hundred

Seven Dollars and Fifty Cents ($1,430,207.50) absent an express written agreement between the

Parties to the contrary. The timing set forth in this provision is contingent upon the receipt of a W-

9 from the Settlement Administrator for the Settlement Fund within 7 Days of the date that the

Preliminary Approval Order is issued. If Guardian does not receive this information by 7 Days

after the date that the Preliminary Approval Order is issued, the payments specified by this

paragraph shall be made within twenty-one (21) calendar days after Guardian receives this

information.

20.     Custody of the Settlement Fund: The Settlement Fund shall be deposited in an

appropriate interest-bearing trust established by the Settlement Administrator but shall remain

subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is

distributed pursuant to this Agreement or returned to whom paid the Settlement Fund in the event

this Agreement is voided, terminated, or cancelled.

a.     In the event this Agreement is lawfully voided, terminated, or cancelled due

to lack of approval from the Court or any other reason other than breach of the Agreement by

Defendants: (i) the Class Representatives and Class Counsel shall have no obligation to repay any

of the Notice and Claims Administration Costs that have been paid or incurred in accordance with the terms and conditions of this Agreement; (ii) any amounts remaining in the Settlement Fund after payment of Notice and Claims Administration Costs paid or incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any taxes, shall be returned to Guardian; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

21.     Non-Reversionary: This Settlement is not a reversionary settlement. As of the Effective Date, all rights of Defendants in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is lawfully voided, cancelled, or terminated, as described in Section XIV of this Agreement. In the event the Effective Date occurs, no portion of the Settlement Fund shall ever be returned to Defendants.

22.     Use of the Settlement Fund: As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement as approved by the Parties and approved by the Court, (ii) any taxes owed by the Settlement Fund, (iii) any Service Awards approved by the Court, (iv) any Attorneys' Fee Award, Costs, and Expenses as approved by the Court, and (v) any benefits to Settlement Class Members, pursuant to the terms and conditions of this Agreement.

23.     Financial Account: The Settlement Fund shall be an account established and administered by the Settlement Administrator, at a financial institution recommended by the Settlement Administrator and approved by Class Counsel and Guardian, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq*.

24.     Payment/Withdrawal Authorization: No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement, and, as may be required, (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Notice and Claims Administration Costs from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and Guardian with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) business days prior to making such withdrawal or payment.

25.     Payments to Class Members: The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Settlement Fund to Claimants pursuant to this Agreement.

26.     Treasury Regulations and Fund Investment: The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any taxes owed by the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ('FDIC') at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest-

bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

27.     Taxes: All taxes owed by the Settlement Fund shall be paid out of the Settlement Fund, shall be considered a Notice and Claims Administration Cost, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by the Class Representatives or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. The Class Representatives and each Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

28.     Limitation of Liability

a.     Defendants and their counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the

payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. Guardian, Actimize, and Webster Bank also shall have no obligation to communicate with Class Members and others regarding amounts paid under the Settlement.

             b.      The Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## V.      BENEFITS TO SETTLEMENT CLASS MEMBERS

        29.      Compensation to Settlement Class Members. Settlement Class Members must timely submit a valid Claim Form in order to receive a settlement benefit. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. For claims deemed invalid, the Settlement Administrator will provide claimants an opportunity to cure in the manner set forth below. Settlement Class Members may elect to file a claim for either 1) a cash payment or 2) a claim for reimbursement of certain losses and Credit Monitoring services.

        30.      Reimbursement/Credit Monitoring Claims. Settlement Class Members who submit a Claim for Reimbursement/Credit Monitoring can seek reimbursement for each of 1) certain

ordinary losses, 2) lost time, and 3) two (2) years of 3 bureau credit monitoring, all subject to the terms explained below.

a.     Compensation For Ordinary Losses. Settlement Class Members not selecting the cash payment, may claim up to $250.00 by submitting a valid and timely claim form and reasonable supporting documentation for ordinary losses demonstrably incurred, more likely than not, as a result of the Data Incident. Ordinary losses can arise from the following categories:

i.      *Out-of-pocket expenses incurred* as a direct result of the Data Incident, including documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel, all of which must be more likely than not attributable to the Data Incident, must not have been previously reimbursed or subject to reimbursement by insurance or a third party, and that are reasonably described and supported by an attestation under penalty of perjury, which will be a part of the claim form.

ii.     *Fees for credit reports, credit monitoring, or other identity theft insurance product* purchased between July 5, 2022, and the date of the close of the Claims Period that the claimant attests under penalty of perjury he/she incurred as a result of the Data Incident and not already paid for or reimbursed by a third party. All such fees must be supported by reasonable documentation substantiating the full extent of the amount claimed.

b.     Compensation For Lost Time. Settlement Class Members may claim up to 4 hours of lost time, at $25 an hour, if at least one-half hour of documented time was spent dealing with the Data Incident. All such lost time must be reasonably described and supported by an

attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Incident.

       c.    <u>Compensation For Extraordinary Losses</u>. Claims under this category must be supported by an attestation under penalty of perjury and documentation substantiating the full extent of the amount claimed. The Settlement Administrator will employ heightened scrutiny in reviewing claims for benefits under this category. Settlement Class Members may submit claims for up to $5,000 in compensation by submitting a valid and timely claim form that proves more likely than not a monetary loss directly arising from identity theft or other fraud perpetuated on or against the Settlement Class Member if:

         i.    The loss is an actual, documented, and unreimbursed monetary loss;

        ii.    The loss was more likely than not the result of the Data Incident;

      iii.    The loss is not already covered by the "Compensation for Ordinary Losses" category; and

      iv.    the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance and other available insurance.

       d.    <u>Credit Monitoring</u>. 24 months of 3 bureau credit and identity theft monitoring will be provided for those Settlement Class Members who elect and submit valid claims for such credit and identity theft monitoring. The credit and identity theft monitoring will have the following features:

         i.    Real time monitoring of the credit file at all three major credit bureaus;

        ii.    Identity theft insurance (no deductible) of $1,000,000; and

iii.     Access to fraud resolution agents to help resolve identity thefts.

31.     Cash Compensation. In lieu of all compensation described in Paragraph 30(a)-(d), Settlement Class Members may file a claim for either a Tier 1 or Tier 2 Alternative Cash Payment, depending on whether their Social Security number was accessed in the Data Incident. The amount of Tier 1 and Tier 2 Alternative Cash Payments will be determined on a pro rata basis as described in Paragraph 44.

a.     <u>Tier 1 Alternative Cash Payment</u>: SSN Settlement Class Members are eligible for a Tier 1 Alternative Cash Payment. Tier 1 Alternative Cash Payments shall be two times (2x) the amount of a Tier 2 Alternative Cash Payment. SSN Settlement Class Members who are eligible for and choose the Tier 1 Alternative Cash Payment shall not be eligible to claim any other monetary or non-monetary benefits available to Settlement Class Members. Any Tier 2 Alternative Cash Payment claim submitted by an SSN Settlement Class Member shall be deemed a claim for a Tier 1 Alternative Cash Payment. If a Settlement Class Member whose Social Security number was not affected in the Data Incident submits a claim for a Tier 1 Alternative Cash Payment, said Settlement Class Member shall be given the option to submit a claim for a Tier 2 Alternative Cash Payment, or, alternatively, any of the benefits listed in Paragraph 30.

b.     <u>Tier 2 Alternative Cash Payment</u>: Settlement Class Members whose Social Security numbers were not involved in the Data Incident are eligible to receive a Tier 2 Alternative Cash Payment. Tier 2 Alternative Cash Payments shall be one half the amount of Tier 1 Alternative Cash Payments. Settlement Class Members who choose the Tier 2 Alternative Cash Payment shall not be eligible to claim any other monetary or non-monetary benefits available to Settlement Class Members.

32.     Data Security Measures. Although they deny any wrongdoing, for purposes of the Settlement Agreement each Defendant should maintain certain data security measures for a period of two (2) years after the Settlement Agreement becomes Final.

 a. Webster Bank should:

  i. Maintain a third-party vendor risk management program, which includes the following measures:

   1. Analyze the data security systems of any prospective third-party vendor to whom Webster Bank discloses or intends to disclose personally identifiable information; and

   2. Maintain a position within Webster Bank that includes overseeing third-party data security issues and provides reports to management no less than annually.

  ii. Webster Bank has reviewed its current systems for protection of its customers' information to confirm that the systems meet applicable standards and it will continue regular reviews to maintain such standards.

 b. Guardian and Actimize should:

  i. Maintain a written information security policy and require their employees to electronically acknowledge receipt and review of their written information security policy;

  ii. Conduct cybersecurity training that contains annual mandatory classes, new hire orientation, and periodic training updates to necessary staff as new information security issues and trends arise;

        iii.      Maintain a written password policy that requires appropriate password complexity commensurate to sensitivity level to the system; and

        iv.      Conduct an annual review of all data security policies to consider whether any updates are needed to meet industry best practices.

## VI.   SETTLEMENT ADMINISTRATION

33.   All Notice and Settlement Administration Costs will be paid from the Settlement Fund.

34.   The Parties agree to solicit competitive bids for settlement administration, including Notice and Claims Administration Costs, to rely upon Postcard Notice and SSN Postcard Notice, and to utilize other appropriate forms of notice where practicable, all in order to contain the administration costs while still providing effective notice to the Settlement Class Members. Based on this competitive bidding process, the Parties agree to select an experienced class action settlement administrator to serve as the Settlement Administrator.

35.   The Settlement Administrator will provide SSN Postcard Notice to all SSN Settlement Class Members and Postcard Notice to all other Settlement Class Members by United States First Class mail of the settlement terms to all Settlement Class Members for whom they are provided a valid mailing address. The Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing. Settlement Class Members shall have sixty (60) Days from the date the notice is mailed to opt out of the Settlement Class or object to the Settlement.

36.     The Settlement Administrator shall also provide notice via publication if necessary and to the extent such notice is deemed appropriate by the Parties in consultation with the Settlement Administrator in order to provide the best notice practicable under the circumstances.

37.     The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of the Settlement and any orders of the Court. The Settlement Administrator may request the assistance of the Parties to facilitate providing notice and to accomplish such other purposes as may be approved by all of Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel. The Parties shall reasonably cooperate with such requests.

38.     The Settlement Administrator will administer the claims process in accordance with the terms of the Settlement and any additional processes agreed to by all of Class Counsel and Guardian and Actimize's Counsel, and Webster Bank's Counsel, subject to the Court's supervision and direction as circumstances may require.

39.     To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form. A Claim Form shall be submitted online at the Settlement Website or by U.S. mail and must be postmarked no later than the Claim Deadline.

40.     The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness.

41.     If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete or inadequately supported Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty-one (21) Days from the date of the written notice to cure the deficiencies. The Settlement Administrator will provide notice of deficiencies

concurrently to Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel. If the defect is not cured within the 21-Day period, then the Claim will be deemed invalid. All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but cured within the 21-Day period, shall be considered "Claimants."

42.     The Settlement Administrator will maintain records of all Claim Forms submitted until three hundred sixty (360) Days after entry of the Final Judgment. Claim Forms and supporting documentation may be provided to the Court upon request and to Guardian, Actimize, Webster Bank, Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel to the extent necessary to resolve claims determination issues pursuant to this Settlement Agreement and Settlement. Defendants or the Settlement Administrator will provide other reports or information that the Court may request or that the Court or Class Counsel may reasonably require. Class Counsel or the Settlement Administrator will provide other reports or information as Guardian, Actimize, and Webster Bank may reasonably require.

43.     Subject to the terms and conditions of this Settlement Agreement, fourteen (14) Days after the Effective Date, the Settlement Administrator shall mail or otherwise provide Claimants who selected Credit Monitoring services under Paragraph 30(d) with enrollment instructions for those services.

44.     Subject to the terms and conditions of this Settlement Agreement, fourteen (14) Days after the Effective Date, the Settlement Administrator shall mail or otherwise provide a payment via check ("Claim Check") or digital payment selected in consultation with Class Counsel (collectively, "Claim Payment") to each Claimant in the amount for which each Claimant has submitted a Claim Form approved by the Settlement Administrator or by the Court, for good cause shown, in accordance with the following distribution procedures:

a.      The Settlement Administrator will first apply the Net Settlement Fund to pay for Credit Monitoring services as described in Paragraph 30(d) claimed by Claimants. After payment of costs related to Credit Monitoring services, the Settlement Administrator will next allocate payments for valid claims for Compensation for Ordinary Losses (as described in Paragraph 30(a)), Compensation for Lost Time (as described in Paragraph 30(b)), and Compensation for Extraordinary Losses (as described in Paragraph 30(c)). The amount of the Net Settlement Fund remaining after all payments for Credit Monitoring, Compensation for Ordinary Losses, Compensation for Lost Time, and Compensation for Extraordinary Losses are made shall be referred to as the "Post-Loss Net Settlement Fund."

b.      The Settlement Administrator shall then utilize the Post-Loss Net Settlement Fund to make all Alternative Cash Payments as described in Paragraph 31. The amount of each Alternative Cash Payment shall be calculated by dividing the Post-Loss Net Settlement Fund by the number of valid claims for Alternative Cash Payments. In making this calculation, each Tier 1 Alternative Cash Payment claim will be counted as two claims, while each Tier 2 Alternative Cash Payment claim will be counted as one claim. Each Tier 1 Alternative Cash Payment shall be exactly two times the amount of each Tier 2 Alternative Cash Payment.

45.     Each Claim Check shall be mailed to the address provided by the Claimant on his or her Claim Form. All Claim Checks issued under this section shall be void if not negotiated within ninety (90) calendar days of their date of issue and shall contain a legend to that effect. Claim Checks issued pursuant to this section that are not negotiated within ninety (90) calendar days of their date of issue shall not be reissued.

46.     To the extent any monies remain in the Net Settlement Fund more than one hundred twenty (120) days after the distribution of Claim Payments to the Claimants, a subsequent payment

24

will be evenly made to all Claimants who cashed or deposited their initial Claim Payments they received, provided that the average payment amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average payment amount in a distribution is less than Three Dollars and No Cents ($3.00), whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed to the Non-Profit Residual Recipient. Should any amount remain in the Net Settlement Fund following the redistributions, the parties will petition and obtain approval from the Court as to the Non-Profit Residual Recipient and to distribute the remaining funds to it.

47.     For any Claim Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Claim Check within thirty (30) Days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Claim Check.

48.     No portion of the Settlement Fund shall revert or be repaid to Guardian after the Effective Date. Any residual funds remaining in the Net Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of this Agreement shall be distributed to the Non-Profit Residual Recipient, as approved by the Court.

## VII.   NOTICE TO SETTLEMENT CLASS MEMBERS

49.     The Parties agree the following Notice Program provides reasonable notice to the Settlement Class.

50.     Direct Notice shall be provided to Settlement Class Members by First Class U.S. Mail for Settlement Class Members for whom the Settlement Administrator has a valid address. Additional Notice may be provided via publication as described in Paragraph 36, to the extent such

notice is deemed appropriate by the Settlement Administrator in consultation with the Parties in order to provide the best notice practicable under the circumstances.

51.     Within seven (7) Days of the entry of the Preliminary Approval Order, Guardian shall provide the Settlement Administrator and Class Counsel with the names and last-known addresses known to Guardian for the Settlement Class Members (the "Class List"). The Settlement Administrator shall, by using the National Change of Address database maintained by the United States Postal Service ("Postal Service"), obtain updates, if any, to the mailing addresses.

52.     Within twenty-one (21) Days following entry of the Preliminary Approval Order ("Notice Date"), the Settlement Administrator shall mail the Postcard Notice or SSN Postcard Notice to all Settlement Class Members by first class United States mail. It has been mutually agreed by the Parties that the Settlement Administrator may rely upon Postcard Notice.

53.     If any Postcard Notice or SSN Postcard Notice is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Postcard Notice or SSN Postcard Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. Other than as set forth above, neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail Notices.

54.     The mailed notice will consist of the Postcard Notice, substantially in the form of Exhibit C, or the SSN Postcard Notice, substantially in the form of Exhibit D. The Settlement Administrator shall have discretion to format this Postcard Notice and SSN Postcard Notice in a reasonable manner to minimize mailing and administrative costs. Before the mailing of the Postcard Notice and SSN Postcard Notice is commenced, Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel shall first be provided with a proof copy (including what

the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and the Court's orders.

55.     No later than twenty-one (21) Days following entry of the Preliminary Approval Order, the Settlement Administrator shall effectuate any publication notice made pursuant to Paragraph 36.

56.     No later than twenty-one (21) Days following entry of the Preliminary Approval Order, and prior to the mailing of the Postcard Notice and SSN Postcard Notice, the Settlement Administrator will create a dedicated Settlement Website. The Settlement Administrator shall cause the CAC, Postcard Notice, SSN Postcard Notice, Long-Form Notice, Claim Form, this Settlement Agreement, and other relevant settlement and court documents to be available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by counsel for the Parties, which approval shall not be unreasonably withheld. The website address and the fact that a more detailed Long-Form Notice and a Claim Form are available through the website shall be included in the Postcard Notice and SSN Postcard Notice.

57.     Claimants shall be able to submit their claims via the Settlement Website.

58.     The Settlement Website shall be maintained from the Notice Date until sixty (60) Days after the Claims Deadline has passed

59.     Claim Forms shall be returned or submitted to the Settlement Administrator online or via U.S. mail, postmarked by the Claims Deadline set by the Court, or be forever barred unless such claim is otherwise approved by the Court at the Final Approval Hearing, for good cause shown as demonstrated by the applicable Settlement Class Member.

60.     Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court, an appropriate affidavit or declaration from the Settlement Administrator respecting compliance with the Court-approved Notice Program.

## VIII.   OPT-OUT PROCEDURE

61.     Each member of the Settlement Class shall have the right to request exclusion from the Settlement Class and not participate in the Settlement Agreement, as provided for in the Preliminary Approval Order.

62.     The Short-Form Notices shall inform each Settlement Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Settlement Agreement, if, before the Opt-Out Deadline, the Settlement Class Member personally completes and mails a request for exclusion ("Opt-Out Request") to the Settlement Administrator at the address set forth in the Short-Form Notices.

63.     For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature (or the original signature of a person authorized by law, such as a trustee, guardian, or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right such as those in the Litigation); and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class and from the Settlement. The Settlement Administrator shall promptly inform Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel of all valid and timely Opt-Out Requests, with all such Settlement Class Members being referred to herein as "Opt-Out Member(s)."

64.     Opt-Out Members shall receive no benefit or compensation under this Settlement Agreement and shall have no right to object to the proposed Settlement Agreement or address the Court at the Final Approval Hearing.

65.     A request for exclusion that does not comply with all of the foregoing, that is not postmarked by the Opt-Out Deadline, or that is sent to an address other than that set forth in the Short-Form Notices shall be invalid, and that Settlement Class Member shall remain in and be treated as being in the Settlement Class and as being bound by this Settlement Agreement and the release contained herein.

66.     Prior to the Final Approval Hearing, the Settlement Administrator shall create a comprehensive list of all Opt-Out Members for submission to the Court and to be provided to Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel.

67.     Opt-Out Members shall not (a) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (b) be entitled to relief under, or be affected by, the Settlement Agreement; (c) gain any rights by virtue of the Settlement Agreement; or (d) be entitled to object to any aspect of the Settlement.

## IX.     OBJECTIONS TO THE SETTLEMENT

68.     Any Settlement Class Member who wishes to object to the proposed Settlement must file with the Court and serve a written objection(s) to the Settlement ("Objection(s)") to Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel, at the addresses set forth in the Long-Form Notice via First Class U.S Mail.

69.     Each Objection must (i) include the case name and number; (ii) set forth the Settlement Class Member's full name, current address, and telephone number; (iii) contain the Settlement Class Member's original signature; (iv) state that the Settlement Class Member objects

to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; and (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position.  In addition to the foregoing, objections should also provide the following information: (a) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through a lawyer) has filed an objection to any proposed class action settlement within the last three (3) years and (b) a list, by case number, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.

70.     Objections must be filed with the Court and served on Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel no later than sixty (60) Days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Short-Form and Long-Form Notices.

71.     Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel may, but need not, respond to the Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing.

72.     An objecting Settlement Class Member has the right, but is not required, to attend the Final Approval Hearing. If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file a notice of appearance with the Court (as well as serve the notice on Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel) by the Objection Deadline.

a.     If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify the attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing and include

the attorney(s) name, address, phone number, e-mail address, state bar(s) to which counsel is admitted, as well as associated state bar numbers.

b.      Any Settlement Class Member who fails to timely file and serve an Objection and notice, if applicable, of his or her intent to appear at the Final Approval Hearing in person or through counsel pursuant to this Settlement Agreement, as detailed in the Long-Form Notice, and otherwise as ordered by the Court, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means.

73.      Any Settlement Class Member who does not submit a timely Objection in complete accordance with this Settlement Agreement, the Long-Form Notice, and otherwise as ordered by the Court, shall not be treated as having filed a valid Objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

## X.      ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

74.      Class Counsel shall request the Court to approve an award of attorneys' fees not to exceed $476,735.83, and reasonable costs and expenses incurred in prosecuting the litigation. Class Counsel's attorneys' fees, costs, and expenses awarded by the Court shall be paid no later than fourteen (14) Days after the Effective Date. For the avoidance of doubt, the Court-approved amount shall be paid from the Settlement Fund. The Parties did not discuss payment of attorneys' fees, costs, and expenses until after they agreed on all materials terms of relief to the Settlement Class.

75.      Class Counsel shall request the Court to approve Service Awards of $1,000 each for the Class Representatives (or $10,000 in total), which awards are intended to recognize Class Representatives for their efforts in the litigation and commitment on behalf of the Settlement Class

("Service Award"). If approved by the Court, the Service Awards will be paid no later than fourteen (14) Days after the Effective Date. For the avoidance of doubt, the Court approved amount shall be paid from the Settlement Fund. The Parties did not discuss or agree upon payment of Service Awards until after they agreed on all materials terms of relief to the Settlement Class.

76.     Class Counsel will file applications with the Court for the requested Service Awards and attorneys' fees, costs, and expenses, and a motion in support of the final approval, at least fourteen (14) Days prior to the Objection Deadline.

77.     The Parties agree that the Court's approval or denial of any request for Service Awards or attorneys' fees, costs, and expenses, are not conditions to this Settlement Agreement and are to be considered by the Court separately from final approval, reasonableness, and adequacy of the Settlement. Any reduction to the Service Award or award of attorneys' fees, costs, and expenses shall not operate to terminate or cancel this Settlement Agreement.

## XI.    NOTICES

78.     All notices to the Parties required by the Settlement Agreement shall be made in writing and communicated by First Class U.S. mail to the following addresses:

All notices to Class Counsel or Plaintiffs shall be sent to:

Ben Barnow
Barnow and Associates, P.C.
205 W. Randolph Street, Suite 1630
Chicago, Illinois 60606
Tel: (312) 621-2000

Charles E Schaffer
Levin Sedran & Berman, LLC
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Tel: (215) 592-1500

All notices to Guardian and Actimize's Counsel, Guardian, or Actimize shall be sent to:

Christopher A. Wiech
Baker & Hostetler LLP
1170 Peachtree Street Northeast, Suite 2400
Atlanta, GA 30309-7676
Tel: 404-459-0050

All notices to Webster Bank's Counsel or Webster Bank shall be sent to:

Joshua L. Becker
Shook, Hardy & Bacon LLP
1230 Peachtree Street, Suite 1200
Atlanta, GA 30309
Tel: 470-867-6000

79.     Other than attorney-client communications or communications otherwise protected from disclosure pursuant to law or rule, the Parties shall promptly provide to each other copies of comments, Objections, Opt-Out Requests, or other documents or filings received from a Settlement Class Member as a result of the Notice Program.

## XII.   SETTLEMENT APPROVAL PROCESS

80.     After execution of this Settlement Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order, which:

a.      Preliminarily approves this Settlement Agreement;

b.      Certifies the Settlement Class;

c.      Finds the proposed Settlement is sufficiently fair, reasonable, adequate, and in the best interests of the Settlement Class;

d.      Finds the Notice Program constitutes valid, due, and sufficient notice to the Settlement Class Members, and constitutes the best notice practicable under the circumstances, complying fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States,

and any other applicable law and that no further notice to the Class is required beyond that provided through the Notice Program;

       e.      Appoints the Settlement Administrator in accordance with the provisions of Section VI;

       f.      Directs the Settlement Administrator to provide notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

       g.      Approves the Claim Form and directs the Settlement Administrator to administer the Settlement in accordance with the provisions of this Settlement Agreement;

       h.      Approves the Opt-Out and Objection procedures as outlined in this Settlement Agreement;

       i.      Schedules a Final Approval Hearing to consider the final approval, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court; and

       j.      Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement and the Settlement.

## XIII.  FINAL APPROVAL HEARING

      81.    Other than attorney-client communications or communications otherwise protected from disclosure pursuant to law or rule, the Parties shall promptly provide to each other copies of comments, Objections, Opt-Out Requests, or other documents or filings received from a Settlement Class Member as a result of the Notice Program.

      82.    The Parties will recommend that the Final Approval Hearing shall be scheduled no earlier than one hundred (100) Days after the entry of the Preliminary Approval Order.

83.     The Parties may file a response to any objections in further support of Final Approval no later than fourteen (14) Days prior to the Final Fairness Hearing or after receipt of any timely submitted objection, whichever is the later. In their discretion, the Parties may respond to late-filed objections, as they deem appropriate.

84.     Any Settlement Class Member who wishes to appear at the Final Approval Hearing, whether pro se or through counsel, must, by the Objection Deadline, either mail or hand-deliver to the Court or file a notice of appearance in the Litigation, take all other actions or make any additional submissions as may be required in the Long-Form Notice or as otherwise ordered by the Court, and mail that notice and any other such pleadings to Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel as provided in the Long-Form Notice.

85.     The Parties shall ask the Court to enter a Final Approval Order and Judgment which includes the following provisions:

a.     A finding that the Notice Program fully and accurately informs all Settlement Class Members entitled to notice of the material elements of the Settlement, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice, and complies fully Fed. R. Civ. P. 23, the United States Constitution, and any other applicable law;

b.     A finding that after proper notice to the Class, and after sufficient opportunity to object, no timely objections to this Settlement Agreement have been made, or a finding that all timely objections have been considered and denied;

c.     Approval of the Settlement, as set forth in the Settlement Agreement, as fair, reasonable, adequate, and in the best interests of the Class, in all respects, finding that the settlement is in good faith, and ordering the Parties to perform the Settlement in accordance with the terms of this Settlement Agreement;

d.      A finding that neither the Final Judgment, the Settlement, nor the Settlement Agreement shall constitute an admission of liability by the Parties, or any liability or wrongdoing whatsoever by any Party;

e.      Subject to the reservation of jurisdiction for matters discussed in subparagraph (g) below, a dismissal with prejudice of claims pending against Guardian, Actimize, and Webster Bank in the Litigation;

f.      A finding that Plaintiffs shall as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Plaintiffs' Released Claims;

g.      A finding that all Settlement Class Members not opting out or who have not properly opted out of the Settlement Class shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Released Class Claims; and

h.      A reservation of exclusive and continuing jurisdiction over the Litigation and the Parties for the purposes of, among other things, (i) supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Preliminary Approval Order, and the Final Judgment; and (ii) supervising the administration and distribution of the relief to the Settlement Class and resolving any disputes that may arise with regard to the foregoing.

86.     If and when the Settlement becomes Final, the claims against Guardian, Actimize, and Webster Bank in the Litigation shall be dismissed with prejudice, with the Parties to bear their own costs and attorneys' fees, costs, and expenses not otherwise awarded in accordance with this Settlement Agreement.

## XIV.   TERMINATION OF THIS SETTLEMENT AGREEMENT

87.     Each Party shall have the right to terminate this Settlement Agreement if:

a.      The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that materially differs in substance to Exhibit E hereto);

b.      The Court denies final approval of this Settlement Agreement;

c.      The Final Approval Order and Final Judgment do not become final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the Settlement on the terms set forth herein;

d.      More than 200 Settlement Class Members Opt-Out of the Settlement; or

e.      The Effective Date cannot occur.

88.     Class Counsel agrees to work in good faith to effectuate this Settlement Agreement and will not solicit or encourage, in any manner, Settlement Class Members to submit Opt-Out Requests.

89.     If a Party elects to terminate this Settlement Agreement under this Section XIV, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or e-mail within ten (10) Days of the occurrence of the condition permitting termination.

90.     Nothing shall prevent Plaintiffs, Guardian, Actimize, or Webster Bank from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement.

91.     If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement, the Preliminary Approval Order, the Final Approval Order (if applicable), and all of their provisions shall be rendered null

and void; (ii) the Litigation and all Parties shall be deemed to have reverted to their respective status in the Litigation as of the date and time immediately preceding the execution of this Settlement Agreement; (iii) except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed; and (iv) no term or draft of this Settlement Agreement nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and Final Judgment), will have any effect or be admissible into evidence for any purpose in the Litigation or any other proceeding.

92.    If the Court does not approve the Settlement or the Effective Date cannot occur for any reason, Guardian, Actimize, and Webster Bank shall retain all its rights and defenses in this Litigation. For example, Guardian, Actimize, and Webster Bank shall have the right to object to the maintenance of the Litigation as a class action, to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Litigation may properly be maintained as a class action, or for any other purpose.

## XV.    RELEASE

93.    The Final Approval Order and Final Judgment shall provide that claims against Guardian, Actimize, and Webster Bank in the Litigation are dismissed with prejudice as to Plaintiffs and all Settlement Class Members who are not Opt-Out Members.

94.     On the Effective Date, Plaintiffs and each and every Settlement Class Member who is not an Opt-Out Member (i.e., has not been excluded from the Settlement Class by the Court), shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder. No other action, demand, suit, arbitration, or other claim or proceeding, regardless of forum, may be pursued against Released Persons with respect to the Plaintiffs' Released Claims or the Released Class Claims.

95.     On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, Plaintiffs will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation (the "Plaintiffs' Release"). The Plaintiffs' Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "Plaintiffs' Released Claims"). The Plaintiffs' Released Claims shall constitute and may be pled as a complete defense to any proceeding arising from, relating to, or filed in connection with the Plaintiffs' Released Claims.

96.     On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, each Settlement Class Member who is not an Opt-Out Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the

Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation (the "Settlement Class Release"). The Settlement Class Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "Released Class Claims"). The Released Class Claims shall constitute and may be pled as a complete defense to any proceeding arising from, relating to, or filed in connection with the Released Class Claims.

97. Subject to Court approval, as of the Effective Date, Plaintiffs and all Settlement Class Members who are not Opt-Out Members shall be bound by this Settlement Agreement and the Settlement Class Release and all of Plaintiffs' Released Claims and the Released Class Claims shall be dismissed with prejudice and released, irrespective of whether the Settlement Class Members received actual notice of the Litigation or this Settlement.

98. Plaintiffs' Released Claims and Released Class Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Litigation and that either of Plaintiffs or any Settlement Class Member (other than Opt-Out Members), and each of their respective heirs, executors, administrators, representatives, agents, partners, trustees, successors, attorneys, and assigns do not know to exist or suspects to exist, which, if known by him, her or it, might affect his, her, or its agreement to release Guardian, Actimize, Webster

Bank, and all other Released Persons, or might affect his, her, or its decision to agree to, or object or not to object to the Settlement. Plaintiffs' Released Claims and Released Class Claims include a waiver of the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by the law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

99.     On entry of the Final Approval Order and Final Judgment, Plaintiffs and Settlement Class Members (other than Opt-Out Members) shall be enjoined from prosecuting, respectively, Plaintiffs' Released Claims and/or the Released Class Claims, in any proceeding in any forum against any of the Released Persons or based on any actions taken by any Released Persons

authorized or required by this Settlement Agreement or the Court or an appellate court as part of this Settlement.

100.    Without in any way limiting the scope of the Plaintiffs' Release or the Settlement Class Release (the "Releases"), the Releases cover, without limitation, any and all claims for attorneys' fees, costs, expenses, or disbursements incurred by Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the claims against Guardian, Actimize, and Webster Bank in the Litigation, the Settlement, the administration of such Settlement and/or Plaintiffs' Released Claims or Released Class Claims, as well as any and all claims for the Service Awards to Plaintiffs.

101.    Nothing in the Releases shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

## XVI.  EFFECTIVE DATE

102.    The "Effective Date" of this Settlement Agreement shall be the first Day after the date when all of the following conditions have occurred:

a.    This Settlement Agreement has been fully executed by all Parties and their counsel;

b.    Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement and approving the Notice Program and Claim Form, all as provided above;

c.    The Court-approved Postcard Notice has been mailed and other notice required by the Notice Program has been effectuated and the Settlement Website has been duly created and maintained as ordered by the Court;

      d.    The Court has entered a Final Approval Order finally approving this Settlement Agreement, as provided above; and

      e.    The Final Approval Order and Final Judgment have become Final.

## XVII.  MISCELLANEOUS PROVISIONS

103.    The recitals and exhibits to this Settlement Agreement are integral parts of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

104.    This Settlement Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Settlement Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in the CAC or Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Guardian, Actimize, and Webster Bank or any admission by Guardian, Actimize, and Webster Bank of any claim in this Litigation or allegation made in any other proceeding, including regulatory matters, directly or indirectly involving the Data Incident or allegations asserted in the CAC and Litigation. This Settlement Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding between the Parties, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by Guardian, Actimize, and Webster Bank that Plaintiffs' claims or any similar claims are suitable for class treatment.

105.    In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Settlement

Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement to give this Settlement Agreement full force and effect.

106.     In the event the Net Settlement Fund is insufficient to cover the payment for Credit Monitoring services claimed by Claimants, the duration of the coverage described in Paragraph 30(d) will be reduced to exhaust the fund. In such an event, no Net Settlement Funds would be distributed for the benefits described in Paragraphs 30(a)-(c), 31. In the event the aggregate amount of all payments for Compensation for Ordinary Losses, Compensation for Lost Time, and Compensation for Extraordinary Losses exceeds the total amount of the Net Settlement Fund, then the value of those payments shall be reduced on a pro rata basis, such that the aggregate value of Compensation for Ordinary Losses, Compensation for Lost Time, and Compensation for Extraordinary Losses and payments for Credit Monitoring services does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds would be distributed to Claimants seeking Cash Compensation. All such determinations shall be performed by the Settlement Administrator.

107.     No person shall have any claim against Plaintiffs, Class Counsel, Guardian, Actimize, Guardian and Actimize's Counsel, Webster Bank, Webster Bank's Counsel, the Settlement Administrator, or the Released Persons or any of the foregoing's agents or representatives based on the administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any order of the Court or appellate court.

108.     This Settlement Agreement constitutes the entire Settlement Agreement between and among the Parties with respect to the Settlement of the Litigation. This Settlement Agreement supersedes all prior negotiations and settlement agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel. The Parties acknowledge,

stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

109.    There shall be no waiver of any term or condition in this Settlement Agreement absent an express writing to that effect by the non-waiving Party. No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

110.    In the event a third party, such as a bankruptcy trustee, former spouse, or other third party has or claims to have a claim against any payment made to a Settlement Class Member, it is the responsibility of the Settlement Class Member to transmit the funds to such third party. Unless otherwise ordered by the Court, the Parties will have no, and do not agree to, any responsibility for such transmittal.

111.    This Settlement Agreement shall not be construed more strictly against one Party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in this Settlement Agreement, all Parties have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

112.    This Settlement Agreement shall be construed under and governed by the laws of the State of New Jersey without regard to its choice of law provisions.

113.    If any press release is to be issued by the Parties, including their respective counsel, concerning the Settlement, it will be a joint press release for which the Parties will agree upon the language therein prior to release.

114.    In the event that one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of the Settlement Agreement, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision(s) had never been a part of this Settlement Agreement as long as the benefits of this Settlement Agreement to Guardian, Actimize, Webster Bank, or the Settlement Class Members are not materially altered, positively or negatively, as a result of the invalid, illegal, or unenforceable provision(s).

115.    This Settlement Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties, Released Persons, and Settlement Class Members. The Parties waive the right to appeal or collaterally attack the Final Judgment entered under this Settlement Agreement.

116.    The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

117.    The Parties stipulate to stay all proceedings in the Litigation until the approval of this Settlement Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve judicial approval of this Settlement Agreement.

118.    This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

119.    The Court shall retain jurisdiction to implement and enforce the Settlement Agreement's terms, and all parties hereto submit to the Court's jurisdiction for such purposes.

120.    Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

121.    Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her or its independent judgment and the advice of his, her or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

122.    Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties have hereby accepted and agreed to the Settlement Agreement.

Approved as to form and content by counsel for Plaintiffs and the Settlement Class:

By: _____

Ben Barnow
Barnow and Associates, P.C.
205 West Randolph Street, Ste. 1630
Chicago, IL 60606


Dated: November 3, 2023

By: _____

Charles E. Schaffer
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106


Dated: November 3, 2023


Approved as to form and content by counsel for Guardian and Actimize:

By: _____

Christopher A. Wiech
Baker & Hostetler LLP
1170 Peachtree Street Northeast
Suite 2400
Atlanta, GA 30309-7676


Dated: November 3, 2023


Approved as to form and content by counsel for Webster Bank:

By: _____

Joshua L. Becker
Shook, Hardy & Bacon LLP
1230 Peachtree Street, Suite 1200
Atlanta, GA 30309


Dated: November 3, 2023

48

# Exhibit A

<table>
<tr><td>

**Your claim must be
submitted online or
postmarked by:
MONTH DD, 2024**

</td><td>

**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**

*Holden, et al. v. Guardian Analytics, Inc., et al.*
Case No. 23-cv-2115

</td><td>

**Guardian
Analytics**

</td></tr>
</table>

## GENERAL INSTRUCTIONS

If you were notified that that your personal information, including your name, Social Security number, or financial account number potentially was impacted as a result of the cyberattack on Guardian Analytics, Inc.'s ("Guardian") network systems, which occurred between November 27, 2022 and January 22, 2023 ("Data Incident"), you are a member of the Settlement Class and are eligible to complete this Claim Form. Guardian provides fraud detection services to Webster Bank and other financial institutions. If you are a Settlement Class Member, you are eligible to request 24 months of identity protection and credit monitoring service free of charge, compensation for up to 4 hours of lost time at a rate of $25.00 per hour, compensation for ordinary losses up to $250.00, and compensation for extraordinary unreimbursed losses up to a total of $5,000 ("Unreimbursed Losses"). As an alternative to making a claim for Unreimbursed Losses, Lost Time, and Credit Monitoring you may elect to receive a Tier 1 (if your Social Security number was affected in the Data Incident) or Tier 2 Alternative Cash Payment, the amount of which will be determined based on the amount remaining in the Settlement Fund after the amounts in the Settlement Fund have been distributed in accordance with the Settlement Agreement.

Please read the claim form carefully and answer all questions. Failure to provide required information could result in a denial of your claim.

This Claim Form may be submitted electronically via the Settlement Website at **URL** or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

*Guardian Analytics Data Incident Settlement Administrator*
*Claims Administrator mailing address*

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Claims Administrator if your contact information changes after you submit this form.

|                              |                              |
|------------------------------|------------------------------|
|                              |                              |
| **First Name**               | **Last Name**                |

|                              |
|------------------------------|
|                              |
| **Street Address**           |

|                    |                    |                    |
|--------------------|--------------------|--------------------|
|                    |                    |                    |
| **City**           | **State**          | **Zip Code**       |

|                    |                    |
|--------------------|--------------------|
|                    |                    |
| **Email Address**  | **Telephone Number** |

**Questions? Go to URL or call 1-XXX-XXX-XXXX.**

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:**

**MONTH DD, 2024**

</td><td>

**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**

*Holden, et al. v. Guardian Analytics, Inc., et al.*
Case No. 23-cv-2115

</td><td>

**Guardian Analytics**

</td></tr>
</table>

## II. PROOF OF CLASS MEMBERSHIP

☐     Check this box to certify that you received a notification that your personal data was impacted in the Data Incident on Guardian's servers that occurred between November 27, 2022 and January 22, 2023.

Enter the Notice ID Number provided on your Notice <u>or</u> the last four digits of your Social Security Number:

| | |
|---|---|
| **Notice ID Number** | **Social Security Number (last four digits only)** |

## III. ALTERNATIVE CASH PAYMENT

☐     Check this box if you wish to receive an Alternative Cash Payment instead of payment for Unreimbursed Losses, Lost Time, and/or Credit Monitoring. The amount of the Alternative Cash Payment will depend on the amount of claims for Alternative Cash Payments and the amount of funds remaining in the Settlement Fund after all other distributions have been made, as explained in the Settlement Agreement. Alternative Cash Payments are separated between Tier 1 and Tier 2. Guardian will cause to be provided to the Settlement Administrator information regarding whether a Settlement Class Member's Social Security number was affected in the Data Incident or not. If your Social Security number was affected in the Data Incident, your claim will be considered a Tier 1 Alternative Cash Payment. If not, your claim will be considered a Tier 2 Alternative Cash Payment. The Postcard Notice you received in the mail stated which Alternative Cash Payment you will be eligible to receive.

*You may **NOT** claim the Alternative Cash Payment AND claim Unreimbursed Losses, Lost Time, and/or Credit Monitoring. If you claim the Alternative Cash Payment, you give up the right to receive reimbursement for Unreimbursed Losses, Lost Time, and Credit Monitoring.*

## IV. IDENTITY THEFT PROTECTION

☐     Check this box if you did not select the Alternative Cash Payment and wish to receive 24 months of free identity protection and credit monitoring service.

## V. COMPENSATION FOR LOST TIME

All members of the Settlement Class who have spent time dealing with the Data Incident may claim up to four (4) hours of lost time at a rate of $25.00 per hour, if they spent at least one-half hour dealing with the Data Incident and did not select the Alternative Cash Payment above. You must reasonably describe the lost time and attest that the time was spent dealing with the Data Incident. No supporting documentation is required.

*Examples: You spent at least one-half hour calling customer service lines, writing letters or emails, or on the Internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed.*

**Hours claimed (up to 4 hours):** _____ hours at $25.00 per hour (minimum 0.5 hours).

**Questions? Go to URL or call 1-XXX-XXX-XXXX.**

<table>
<tr><td>**Your claim must be submitted online or _postmarked by_: MONTH DD, 2024**</td><td>**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**

*Holden, et al. v. Guardian Analytics, Inc., et al.*
Case No. 23-cv-2115</td><td>**Guardian Analytics**</td></tr>
</table>

◯   I attest and affirm under penalty of perjury that to the best of my knowledge and belief any claimed lost time was spent related to the Data Incident.

**Describe the Lost Time:**

_____

_____

_____

_____

_____

_____

_____

_____

## VI.  UNREIMBURSED LOSSES

All members of the Settlement Class who submit a Valid Claim using this Claim Form and supporting documentation are eligible for reimbursement of documented out-of-pocket expenses that were incurred as a result of the Data Incident, so long as you did not select the Alternative Cash Payment above. Check the box for each category of benefits you would like to claim.

You must reasonably describe the Unreimbursed Losses, provide supporting documentation, and attest that the losses were incurred as a result of the Data Incident. Please provide as much information as you can to help us figure out if you are entitled to a settlement payment.

### A.  ORDINARY LOSSES

Settlement Class Members who submit a Valid Claim using this Claim Form and supporting documentation are eligible for reimbursement of up to $250.00 of ordinary out-of-pocket expenses resulting from the Data Incident.

> *Examples: Documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel relating to the Data Incident; fees for credit reports, credit monitoring, or other identity theft insurance products purchased between November 27, 2022 and [Claim Deadline].*

◯   I incurred ordinary losses as a result of the Data Incident totaling $ _____ (max $250.00).

Describe your ordinary losses below, including the date the loss was incurred and its relation to the Data Incident:

_____

_____

_____

_____

_____

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:**

**MONTH DD, 2024**

</td><td>

**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**

*Holden, et al. v. Guardian Analytics, Inc., et al.*
Case No. 23-cv-2115

</td><td>

**Guardian Analytics**

</td></tr>
</table>

**Documentation of ordinary losses is required.** You may mark out any transactions that are not relevant to your claim before sending in the documentation.

If you are seeking reimbursement for fees, expenses, or charges, you MUST attach a copy of a statement from the company that charged you, or a receipt for the amount you incurred. If you are seeking reimbursement for credit reports, credit monitoring, or other identity theft insurance products purchased between November 27, 2022 and [CLAIM DEADLINE], you MUST attach a copy of a receipt or other proof of purchase for each credit report or product purchased.

> *Examples: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e., police station, IRS office), indication of why you traveled there (i.e., police report or letter from IRS re: falsified tax return) and number of miles you traveled; receipts or account statements reflecting purchases made for Credit Monitoring or Identity Theft Insurance Services.*

All ordinary losses must be more likely than not attributable to the Data Incident and must not have been previously reimbursed.

◯ I attest and affirm under penalty of perjury that to the best of my knowledge and belief any claimed ordinary losses have not been previously reimbursed and were incurred as a result of the Data Incident.

## B. EXTRAORDINARY LOSSES

Settlement Class Members who submit a Valid Claim using this Claim Form and supporting documentation are eligible for reimbursement of up to $5,000.00 of extraordinary out-of-pocket expenses due to identity theft or other fraud resulting from the Data Incident, so long as you did not select the Alternative Cash Payment above.

**Extraordinary expenses MUST:** (1) be an actual, documented, unreimbursed monetary loss; (2) be more likely than not a result of the Data Incident; (3) not be covered by a claim for Ordinary Losses (Section A above); and (4) have been incurred despite reasonable efforts to avoid or be reimbursed for the loss (including exhaustion of all available credit monitoring insurance, identity theft insurance, and other available insurance).

◯ I incurred extraordinary losses as a result of the Data Incident totaling $ _____ (max $5,000.00).

Describe your extraordinary losses below, including the date the loss was incurred and its relation to the Data Incident:

_____
_____
_____
_____
_____
_____
_____
_____

<table>
<tr><td>

**Your claim must be
submitted online or
postmarked by:
MONTH DD, 2024**

</td><td>

### CLAIM FORM FOR DATA INCIDENT SETTLEMENT

*Holden, et al. v. Guardian Analytics, Inc., et al.*
Case No. 23-cv-2115

</td><td>

**Guardian
Analytics**

</td></tr>
</table>

**Documentation of extraordinary loss is required.** The documentation must show the full amount of the claimed loss. You may mark out any transactions that are not relevant to your claim before sending in the documentation.

The loss must be more likely than not the result of the Data Incident and must not already be covered by the ordinary reimbursement category.

◯   I attest and affirm under penalty of perjury that to the best of my knowledge and belief any claimed extraordinary losses were actual monetary losses incurred due to identity theft or fraud as a result of the Data Incident and are not covered by a claim for ordinary losses.

## VII.  PAYMENT SELECTION

Please select **one** of the following payment options, which will be used should you be eligible to receive a settlement payment:

☐   **PayPal** - Enter your PayPal email address: _____

☐   **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __

☐   **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __   or Email Address: _____

☐   **Physical Check -** Payment will be mailed to the address provided above.

## VIII.  ATTESTATION & SIGNATURE

I swear and affirm under the laws of my state that the information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

_____   _____   _____

Signature                                    Printed Name                                    Date

# Exhibit B

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*THIS IS A COURT-AUTHORIZED NOTICE. IT IS NOT A NOTICE OF A LAWSUIT AGAINST YOU OR A SOLICITATION FROM A LAWYER.*

## PLEASE READ THIS NOTICE CAREFULLY

**To:** **All persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023, referred to herein as the "Settlement Class."**

A proposed Settlement of claims against Guardian Analytics, Inc. ("Guardian"), Actimize, Inc. ("Actimize"), and Webster Bank, N.A. ("Webster Bank") (collectively, "Defendants") has been reached in a class action lawsuit against Defendants. The lawsuit asserted claims against Defendants arising out of or related to a cyberattack against Guardian that occurred between November 27, 2022, and January 22, 2023.

If you are a member of the Settlement Class, you have the following options:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM BY _____ __, 2024** | You must submit a valid claim form to receive credit monitoring services from the Settlement, reimbursement for unreimbursed time or expenses, or an Alternative Cash Payment. |
| **DO NOTHING** | You will receive no benefits from the Settlement and will no longer be able to sue the Released Persons,[1] including Defendants, over the claims resolved in the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY _____ ___, 2024** | You will receive no benefits from the Settlement, but you will retain your legal claims against the Released Parties. |
| **OBJECT BY _____ ___, 2024** | Write to the Court about why you do not like the Settlement. You must remain in the Settlement Class to object to the Settlement. |
| **GO TO A HEARING ON _____ ___, 2024** | Ask to speak in Court about the fairness of the Settlement. |

---

[1] The Released Persons are Guardian, Actimize, Webster Bank, and their present and former parents, subsidiaries, divisions, departments, affiliates, employees, servants, members, providers, partners, principals, directors, shareholders, owners, predecessors, successors, assigns, and insurers, and each of the foregoing's former or present directors, trustees, officers, employees, representatives, agents, providers, consultants, advisors, attorneys, accountants, partners, vendors, customers, insurers, reinsurers, and subrogees.

No payments or other settlement benefits will be issued until after the Court gives final approval to the Settlement and any appeals are resolved.

**Please review this notice carefully.** You can learn more about the Settlement by visiting **URL** or by calling 1-XXX-XXX-XXXX.

## Further Information about this Notice and the Lawsuit

| 1. | Why was this Notice issued? |
|---|---|

You received this notice because you may be a member of the Settlement Class eligible to receive benefits from a proposed settlement of the class action lawsuit *Holden, et al. v. Guardian Analytics, Inc., et al.*, No. 23-cv-2115, currently pending in the United States District Court for the District of New Jersey (the "Lawsuit"). The Court overseeing the Lawsuit authorized this Notice to advise Settlement Class Members about the proposed Settlement that will affect their legal rights. The Notice explains certain legal rights and options you have in connection with that Settlement.

| 2. | What is the Lawsuit about? |
|---|---|

The Lawsuit is a proposed class action lawsuit relating to the Data Incident that impacted the personal data of certain customers of Guardian's clients, including Webster Bank.

| 3. | Why is the Lawsuit a class action? |
|---|---|

In a class action, one or more representative plaintiffs bring a lawsuit for others who are alleged to have similar claims. Together, these people are the "class" and each individually is a "class member." There are ten Plaintiffs (or Representative Plaintiffs) in this case: Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira.

| 4. | Why is there a Settlement? |
|---|---|

Plaintiffs in the Lawsuit, through their attorneys, investigated the facts and law relating to the issues in the Lawsuit. Plaintiffs and Class Counsel believe that the settlement is fair, reasonable, and adequate and will provide substantial benefits to the Settlement Class. The Court has not decided whether Plaintiffs' claims or Defendants' defenses have any merit, and it will not do so if the proposed Settlement is approved. By agreeing to settle, both sides avoid the cost and risk of a trial, and Settlement Class Members who submit valid claims will receive benefits from the Settlement. The Settlement does not mean that Defendants did anything wrong, or that Plaintiffs and the Settlement Class would or would not win the case if it were to go to trial.

## <u>Terms of the Proposed Settlement</u>

| 5. | Who is in the Settlement Class? |
|----|----------------------------------|

The Settlement Class is defined as all persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023 (*i.e.*, the Data Incident, as previously defined).

Guardian's, Actimize's, and Webster Bank's officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

| 6. | What are the Settlement Benefits? |
|----|------------------------------------|

Guardian, on behalf of all Defendants, will create a Settlement Fund of $1,430,207.50, which will be used to pay for (i) reasonable Notice and Claims Administration Costs incurred pursuant to the Settlement Agreement as approved by the Parties and approved by the Court; (ii) any taxes owed by the Settlement Fund; (iii) any Service Awards approved by the Court; (iv) any attorneys' fees, costs, and expenses as approved by the Court; and (v) any benefits to Settlement Class Members, pursuant to the terms and conditions of the Settlement. The benefits to Settlement Class Members are explained below:

**Compensation for Unreimbursed Losses and Credit Monitoring**
The Settlement provides compensation for the following unreimbursed losses:

1. **Time Spent:** Up to 4 hours of lost time at a rate of $25.00 per hour for time spent dealing with the Data Incident, if the Settlement Class Member spent at least one-half (0.5) hours dealing with the Data Incident.

2. **Ordinary Out-of-Pocket Expenses or Losses:** Out-of-pocket expenses up to $250.00 incurred as a result of the Data Incident, including: documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel, and fees for credit reports, credit monitoring, or other identity theft insurance product purchased between November 27, 2022, and [the Claims Deadline].

3. **Extraordinary Out-of-Pocket Expenses or Losses:** Out-of-pocket expenses up to $5,000.00 directly arising from identity theft or other fraud perpetuated on or against the Settlement Class Member as a result of the Data Incident.

3

Compensation for lost time requires only an attestation that any claimed lost time was spent related to the Data Incident.

Compensation for unreimbursed losses (except for lost time), shall be paid only if: (1) the loss is an actual, documented,[2] and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; and (3) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

4. **Credit Monitoring Services:** Settlement Class Members who do not opt for the Alternative Cash Payment are eligible to receive 24 months of Credit Monitoring Services free of charge. The Credit Monitoring Services will be provided to all valid claimants who timely enroll in these services for a period of 24 months from the date of activation, including daily three-bureau credit monitoring with Equifax, Experian, and TransUnion; identity restoration services; and $1 million in identity theft insurance, among other features.

**Tier 1 and Tier 2 Alternative Cash Payments:** As an alternative to a claim for Unreimbursed Losses, Lost Time, and Credit Monitoring, Settlement Class Members may submit a claim to receive a pro rata cash payment from the Settlement Fund ("Alternative Cash Payment"). The amount of the Alternative Cash Payment will be calculated in accordance with the Settlement Agreement, which provides for a distribution of the Settlement Fund to first cover other costs and then distribute the remaining funds amongst Settlement Class Members who elected to receive an Alternative Cash Payment. Alternative Cash Payments are split between Tier 1 Alternative Cash Payments and Tier 2 Alternative Cash Payments. Each Settlement Class Member whose Social Security number was affected in the Data Incident is eligible to select a Tier 1 Alternative Cash Payment, which is worth two times (2x) the amount as a Tier 2 Alternative Cash Payment. Each Settlement Class Members whose Social Security number was not affected in the Data Incident is eligible to select a Tier 2 Alternative Cash Payment. Settlement Class Members whose Social Security numbers were affected in the Data Incident will be sent an SSN Postcard Notice, informing them that they are eligible to select a Tier 1 Alternative Cash Payment. If you did not receive an SSN Postcard Notice, you may only select a Tier 2 Alternative Cash Payment.

| 7. | What claims are Settlement Class Members giving up under the Settlement? |
|---|---|

Settlement Class Members who do not validly exclude themselves from the Settlement will be bound by the Settlement Agreement and Release ("Settlement Agreement"), and any final judgment entered by the Court, and will give up their right to sue the Released Parties for the claims being resolved by the Settlement.

---

[2] Self-prepared documents, such as handwritten receipts, are, by themselves, insufficient to receive reimbursement.

For more information visit URL or call toll-free XXX-XXX-XXXX

The claims that are being released and the persons and entities being released from those claims are described in the Settlement Agreement. To view the Settlement Agreement, please visit **URL**.

## <u>Your Options as a Settlement Class Member</u>

| 8. | If I am a Settlement Class Member, what options do I have? |
|---|---|

If you are a Settlement Class Member, you do not have to do anything to remain in the Settlement. However, if you want to obtain the benefits available to Settlement Class Members under the Settlement, you **must** complete and submit a Claim Form postmarked or submitted online by **Month DD, 2024**. You may download or submit a Claim Form online at **URL**.

If you do not want to give up your right to sue the Released Parties related to the Data Incident or the issues raised in this case, you must exclude yourself (or "opt out") from the Settlement Class. See Question 12 below for instructions on how to exclude yourself.

If you object to the settlement, you must remain a Settlement Class Member (*i.e.*, you may not also exclude yourself from the Settlement Class by opting out) and file a written objection in this case with the Court. (See Question 20 below.) If you object, you must still submit a claim if you want compensation for unreimbursed losses and credit monitoring services or an Alternative Cash Payment.

| 9. | What happens if I do nothing? |
|---|---|

If you do nothing, you will get no benefit from this Settlement. Unless you exclude yourself, after the Settlement is granted final approval and the judgment becomes final, you will be bound by the judgment and you will never be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Released Parties related to the claims released by the Settlement.

| 10. | How do I submit a claim? |
|---|---|

You may complete the Claim Form online at **URL.** You may also obtain a paper Claim Form by downloading it at **URL** or by calling the Settlement Administrator at **1-XXX-XXX-XXXX**. If you choose to complete a paper Claim Form, you may either submit the completed and signed Claim Form and any supporting materials electronically at **URL** or mail them to:

Guardian Analytics Data Incident Settlement Administrator
{Settlement Administrator Mailing Address}
{Settlement Administrator City/State/Zip}

| 11. | Who decides my Settlement claim and how do they do it? |
|---|---|

The Settlement Administrator will initially decide whether a Claim Form is complete and valid and includes all required documentation. The Settlement Administrator may require additional

5

information from any claimant. Failure to timely provide all required information will invalidate a claim and it will not be paid.

| 12. | How do I exclude myself from the Settlement? |
| --- | --- |

You must make a signed written request that (a) states your name, address, and phone number; (b) is signed by you or a person authorized by law to sign on your behalf; (c) unequivocally states your desire to be excluded from the Settlement and Settlement Class. You must send your request by **Month DD, 2023,** to this address:

Guardian Analytics Data Incident Settlement Administrator
Attn: Exclusions
{Settlement Administrator Mailing Address}
{Settlement Administrator City/State/Zip}

| 13. | If I exclude myself, can I receive a benefit from this Settlement? |
| --- | --- |

No. If you exclude yourself, you will not be entitled to any Settlement benefits. However, you will also not be bound by any judgment in this Lawsuit.

| 14. | If I do not exclude myself, can I sue the Released Parties for the Data Incident later? |
| --- | --- |

No. Unless you exclude yourself, you give up any right to sue the Released Parties for the claims that this Settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form requesting a benefit from this Settlement.

| 15. | How do I object to the settlement? |
| --- | --- |

All Settlement Class Members who do not request exclusion from the Settlement Class have the right to object to the Settlement or any part of it. You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement benefits will be sent out and the lawsuit will continue.

Any objection to the proposed Settlement must be in writing, and it and any supporting papers must be filed with the Court and a copy mailed to Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel at the addresses listed below.

| Class Counsel | Guardian and Actimize's Counsel | Webster Bank's Counsel |
| --- | --- | --- |
| Ben Barnow<br>Barnow and Associates, P.C.<br>205 W. Randolph Street, | Christopher A. Wiech<br>Baker & Hostetler LLP<br>1170 Peachtree Street, Ste. 2400<br>Atlanta, Georgia 30309 | Joshua L. Becker<br>Shook, Hardy & Bacon LLP<br>1230 Peachtree Street, Suite 1200<br>Atlanta, Georgia 30309 |

| | | |
|---|---|---|
| Suite 1630<br>Chicago, Illinois 60606<br><br>Charles E Schaffer<br>Levin Sedran & Berman, LLP<br>510 Walnut Street, Suite 500<br>Philadelphia, Pennsylvania 19106 | | |

Objections must be filed or postmarked no later than **Month DD, 2024**.

To be considered by the Court, your objection must include: (a) the title of the case; (b) your name, address, and telephone number; (c) all legal and factual bases for your objection; (d) copies of any documents that you want the Court to consider; (e) whether you object to the Settlement in whole or in part; (f) the name, address, telephone number, email address, and state bar admissions of any attorneys representing you; (g) whether you (or your attorney) intends to appear at the Final Approval Hearing; and (h) your signature. Additionally, objectors must (a) a list, by case name, court, and docket number, all other cases in which the objector (directly or through a lawyer) has filed an objection to any proposed class action settlement within the last three (3) years and (b) a list, by case number, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.

Should you wish to appear at the Final Approval Hearing, you must so state, and must identify any documents or witnesses you intend to call on your behalf.

If you fail to object in this manner, you will be deemed to have waived and forfeited any and all rights you may have to appear separately and/or to object to the Settlement Agreement, and you shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions set forth in this paragraph. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Judgment and Order approving this Settlement Agreement, or the judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## Court Approval of the Settlement

| 16.    How, when, and where will the Court decide whether to approve the Settlement? |
|---|

The Court will hold a Final Approval Hearing to decide whether to approve the Settlement. That hearing is scheduled for **Month DD, 2024,** at **XX:XX A.M./P.M.,** at Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07102, Courtroom MLK 4B. At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have properly requested to speak at the hearing. The Court may also consider Plaintiffs' request for

For more information visit **URL** or call toll-free **XXX-XXX-XXXX**

attorneys' fees, costs, and expenses, and Plaintiffs' request for service awards for Plaintiffs. After the hearing, the Court will decide whether to approve the Settlement.

It is possible the Court could reschedule the hearing to a different date or time without notice, so it is a good idea before the hearing to check **URL** to confirm the schedule if you wish to attend.

| 17. | Do I have to attend the hearing? |
|---|---|

No. You do not need to attend the hearing unless you object to the Settlement and wish to appear in person. It is not necessary to appear in person to make an objection; the Court will consider any written objections properly submitted pursuant to the instructions in Question 15. You or your own lawyer are welcome to attend the hearing at your expense, but you are not required to do so.

| 18. | What happens if the Court approves the Settlement? |
|---|---|

If the Court approves the Settlement, there may still be appeals. If an appeal is taken, it is possible the Settlement could be disapproved on appeal. We do not know how long this process may take.

| 19. | What happens if the Court does not approve the Settlement? |
|---|---|

If the Court does not approve the Settlement, there will be no Settlement benefits available to Settlement Class Members, Class Counsel, or Plaintiffs, and the case will proceed as if no Settlement had been attempted.

## Lawyers for the Settlement Class

| 20. | Who represents the Settlement Class? |
|---|---|

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit:

Ben Barnow
Barnow and Associates, P.C.
205 W. Randolph Street, Suite 1630
Chicago, Illinois 60606
Tel: (312) 621-2000

Charles E Schaffer
Levin Sedran & Berman, LLP
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Tel: (215) 592-1500

Settlement Class Members will not be charged for the services of Class Counsel; Class Counsel will be paid by Defendants out of the Settlement Fund, subject to Court approval. However, you

8

For more information visit **URL** or call toll-free **XXX-XXX-XXXX**

may hire your own attorney at your own expense to advise you in this matter or represent you in making an objection or appearing at the Final Approval Hearing.

| 21.    How will the lawyers for the Settlement Class be paid? |
| --- |

Plaintiffs will seek an order from the Court requesting that attorneys' fees not to exceed $476,735.83 and reasonable costs and expenses be awarded to Class Counsel out of the Settlement Fund.

Plaintiffs will seek an order from the Court requesting that Service Awards in the amount of $1,000 be awarded to Representative Plaintiffs for their time and effort expended on behalf of the Settlement Class in the Litigation.

## For Further Information

| 22.    What if I want further information or have questions? |
| --- |

For additional information, please visit URL. You may also contact the Settlement Administrator by mail, email or phone:

Mail:
Guardian Analytics Data Incident Settlement Administrator
{Settlement Administrator Mailing Address}
{Settlement Administrator City/State/Zip}

Email:
EMAIL ADDRESS

Phone:
XXX-XXX-XXXX

**PLEASE DO NOT CONTACT THE COURT, GUARDIAN AND ACTIMIZE'S COUNSEL, OR WEBSTER BANK'S COUNSEL FOR INFORMATION REGARDING THIS SETTLEMENT.**

For more information visit URL or call toll-free XXX-XXX-XXXX

# Exhibit C

**LEGAL NOTICE
ONLY TO BE OPENED
BY THE INTENDED
RECIPIENT**

*A federal court has
authorized this Notice.*

*This is not a solicitation
from a lawyer.*

Guardian Analytics Data Incident Settlement Administrator
{Settlement Administrator mailing address}

«ScanString»

Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

**If Your Personal Information Was Potentially Impacted By a Data Security Incident Involving Guardian Analytics, Inc., You May Be Eligible for a <u>CASH PAYMENT</u> or Other Benefits from a Class Action Settlement.**
*PLEASE VISIT <mark>[InsertWebsiteLink]</mark> FOR MORE INFORMATION.*

**Why am I receiving this notice?** A class action settlement in the case entitled *Holden, et al. v. Guardian Analytics, Inc., et al.*, No 23-cv-2115, currently pending in the United States District Court for the District of New Jersey, has been reached between the Plaintiffs and Guardian Analytics, Inc. ("Guardian"), Actimize, Inc. ("Actimize"), and Webster Bank, N.A. ("Webster Bank") (collectively, "Defendants"). The case concerns a cyberattack on Guardian's network systems between November 27, 2022, and January 26, 2023 (the "Data Incident"). You are receiving this notice because records show that your personal information was potentially accessed in the Data Incident. **The records show that you may be a member of the Settlement Class, defined below.**

**Who's Included in the Settlement Class?** The Settlement Class includes all persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023.

**What are the Settlement benefits?** The Settlement provides for payments to Settlement Class Members who submit valid claims for reimbursement of: (i) up to 4 hours of lost time for Class Members who spent at least one-half hour responding to the Data Incident, at the rate of $25 per hour; (ii) up to $250 for ordinary unreimbursed out-of-pocket expenses incurred as a result of the Data Incident; (iii) up to $5,000 for extraordinary unreimbursed out-of-pocket expenses incurred as a result of the Data Incident; and (iv) two years of three-bureau credit monitoring services; or (v) a <u>Tier 2</u> Alternative Cash Payment. Please visit <mark>URL</mark> for a full description of Settlement benefits and more information on how to submit a Claim Form. The deadline to submit a Claim Form is <mark>Month DD, 2023.</mark>

**What are my options? To receive payment, you must submit a Claim Form by <mark>Month DD, 2023</mark>.** The Claim Form can be found on the website <mark>URL</mark>. If you do not want to be legally bound by the Settlement, you must **opt out** of the Settlement by <mark>Month DD, 2023</mark>. If you want to **object** to the Settlement, you must file an objection by <mark>Month DD, 202</mark>3. The Long Form Notice available on the Settlement Website explains how to submit a Claim Form, opt out, or object.

**The Court's Fairness Hearing.** The Court will hold a Fairness Hearing on <mark>Month DD, 2023,</mark> to consider whether to approve the Settlement, a request for attorneys' fees, costs, and expenses for Plaintiffs' counsel, and service awards for the Settlement Class Representatives. You may appear at the hearing, either yourself or through an attorney hired by you, but it is not required. More information is available on the website.

For more information, please visit URL or call toll-free XXX-XXX-XXXX

_____

_____

_____

Guardian Analytics Data Incident Settlement Administrator
{Settlement Administrator Mailing Address}

# Exhibit D

**LEGAL NOTICE ONLY TO BE OPENED BY THE INTENDED RECIPIENT**

*A federal court has authorized this Notice.*

*This is not a solicitation from a lawyer.*

Guardian Analytics Data Incident Settlement Administrator
{Settlement Administrator mailing address}

«ScanString»
Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

**If Your Personal Information Was Potentially Impacted in a Data Security Incident Involving Guardian Analytics, Inc., You May Be Eligible for a <u>CASH PAYMENT</u> or Other Benefits from a Class Action Settlement.**
*PLEASE VISIT [InsertWebsiteLink] FOR MORE INFORMATION.*

**Why am I receiving this notice?** A class action settlement in the case entitled *Holden, et al. v. Guardian Analytics, Inc., et al.*, No 23-cv-2115, currently pending in the United States District Court for the District of New Jersey, has been reached between the Plaintiffs and Guardian Analytics, Inc. ("Guardian"), Actimize, Inc. ("Actimize"), and Webster Bank, N.A. ("Webster Bank") (collectively, "Defendants"). The case concerns a cyberattack on Guardian's network systems between November 27, 2022, and January 26, 2023 (the "Data Incident"). You are receiving this notice because records show that your personal information was potentially accessed in the Data Incident. **The records show that you may be a member of the Settlement Class AND the SSN Settlement Class, both defined below.**

**Who's Included in the Settlement Class?** The Settlement Class includes all persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023. Records show that you are also an **SSN Settlement Class Member**. SSN Settlement Class Members are eligible to select a Tier 1 Alternative Cash Payment. Please find more information on the Settlement Website's FAQ page.

**What are the Settlement benefits?** The Settlement provides for payments to Settlement Class Members who submit valid claims for reimbursement of: (i) up to 4 hours of lost time for Class Members who spent at least one-half hour responding to the Data Incident, at the rate of $25 per hour; (ii) up to $250 for ordinary unreimbursed out-of-pocket expenses incurred as a result of the Data Incident; (iii) up to $5,000 for extraordinary unreimbursed out-of-pocket expenses incurred as a result of the Data Incident; and (iv) two years of three-bureau credit monitoring services; or (v) a Tier 1 Alternative Cash Payment. Please visit **URL** for a full description of Settlement benefits and more information on how to submit a Claim Form. The deadline to submit a Claim Form is **Month DD, 2023.**

**What are my options? To receive payment, you must submit a Claim Form by **Month DD, 2023**.** The Claim Form can be found on the website **URL**. If you do not want to be legally bound by the Settlement, you must **opt out** of the Settlement by **Month DD, 2023**. If you want to **object** to the Settlement, you must file an objection by **Month DD, 202**3. The Long Form Notice available on the Settlement Website explains how to submit a Claim Form, opt out, or object.

**The Court's Fairness Hearing.** The Court will hold a Fairness Hearing on **Month DD, 2023,** to consider whether to approve the Settlement, a request for attorneys' fees, costs, and expenses for Plaintiffs' counsel, and service awards for the Settlement Class Representatives. You may appear at the hearing, either yourself or through an attorney hired by you, but it is not required. More information is available on the website.

For more information, please visit URL or call toll-free XXX-XXX-XXXX

_____

_____

_____

Guardian Analytics Data Incident Settlement Administrator
{Settlement Administrator Mailing Address}

# Exhibit E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK S. HOLDEN, RICHARD ANDISIO, EDWARD MARSHALL, ANN MARIE MARSHALL, ARTHUR CHRISTIANI, JOHNIELLE DWYER, PAWEL KRZYKOWSKI, MARIOLA KRZYNOWEK, JAMES HOWE, and CINDY A. PEREIRA, individually, and on behalf of all others similarly situated, | Case No. 23-2115 |
| | CLASS ACTION |
| Plaintiffs, | |
| v. | |
| GUARDIAN ANALYTICS, INC., ACTIMIZE INC., and WEBSTER BANK, N.A., | |
| Defendants. | |

### [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF
### CLASS ACTION SETTLEMENT

This matter came before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement Agreement (the "Motion"). Plaintiffs Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira, individually and on behalf of the proposed Settlement Class, and Defendants Guardian Analytics, Inc. ("Guardian"), Actimize Inc. ("Actimize"), Webster Bank, N.A. ("Webster Bank") (together, "Defendants") have entered into a Settlement Agreement and Release (the "Settlement Agreement") that settles claims against Defendants in the above-captioned litigation.

Six putative class actions were filed in the District of New Jersey in response to a cyberattack of Guardian's network systems (*Holden, et al. v. Guardian Analytics, et al.*, No. 23-

2115, *Marshall, et al. v. Guardian Analytics, et al.*, No. 23-2156, *Christiani v. Guardian Analytics, et al.*, No. 23-2158, *Dwyer v. Guardian Analytics, et al.*, No. 23-2320, *Krzykowski, et al. v. Guardian Analytics, et al.*, No. 23-2322, and *Pereira v. Guardian Analytics, et al.*, No. 23-2431). The cases were consolidated before this Court under lead case no. 23-2115 and Ben Barnow of Barnow and Associates, P.C. and Charles E. Schaffer of Levin Sedran & Berman, LLP were appointed as Interim Co-Lead Counsel. *See* ECF No. 24.

After the cases were consolidated, Plaintiffs filed a consolidated amended complaint ("CAC"). *See* ECF No. 27. The CAC alleges that between November 27, 2022 and January 22, 2023, Guardian was the target of a cyberattack perpetrated by an unauthorized third-party threat actor who gained access to Guardian's network systems, which contained information about certain of its clients' customers (the "Data Incident"). This cyberattack impacted Plaintiffs' and Settlement Class Members' personal information. *See id.* ¶¶ 1–3. The personal data potentially accessed in the Data Incident included Plaintiffs' and Class members' names, Social Security numbers or financial account numbers.

In the CAC, Plaintiffs allege seven causes of action: (i) negligence; (ii) negligence per se; (iii) breach of implied contract; (iv) breach of fiduciary duty; (v) unjust enrichment; (vi) declaratory relief; and (vii) violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*. *See id.* ¶¶ 129–84. Plaintiffs allege that Defendants failed to safeguard Plaintiffs' and Settlement Class Members' personal data. *See id.* ¶ 4. Plaintiffs also allege that, as a result of the Data Incident, Plaintiffs and Settlement Class Members suffered ascertainable losses, including, but not limited to: (i) a substantially increased risk of identity theft—risk which justifies or necessitates expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of

their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security. *See id.* ¶ 118. Plaintiffs and the putative class seek monetary and equitable relief. Defendants deny the allegations in the Lawsuit, deny any allegation of wrongdoing on their part, and deny liability for Plaintiffs and Settlement Class Members' claims.

After prolonged and serious arm's-length settlement negotiations, including a mediation before the Honorable Stephen Orlofsky (Ret.), the Parties reached a Settlement Agreement and Release (the "Settlement Agreement") that they consider fair, reasonable, and adequate, and in the best interests of all the Settlement Class Members.

WHEREAS, Plaintiffs, on behalf of the proposed Settlement Class Members, having made a motion for an order preliminarily approving a settlement in accordance with the Settlement Agreement, executed on November 3, 2023, and attached as **Exhibit 1** to the Motion, which, together with the Exhibits attached thereto, set forth the terms and conditions for the proposed settlement; and the Court having read and considered the Settlement Agreement and the exhibits attached thereto; and

WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set forth in the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Court has reviewed the Settlement Agreement and does hereby preliminarily approve the settlement set forth therein as fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing described below.

2.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e), and for purposes of this Settlement only, the Court grants provisional certification to the following Settlement Class:

> **<u>The Settlement Class</u>:** All persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's systems between November 27, 2022 and January 22, 2023.

Excluded from the Settlement Class are Guardian's, Actimize's, and Webster Bank's officers and directors, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. The Settlement Class may include as many as 197,270 individuals—each, a "Settlement Class Member."

3.     The Court provisionally finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; (d) the Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Class Representatives have no interest antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

4.      For the purposes of the settlement only, Plaintiffs Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira are preliminarily certified as the Class Representatives.

5.      The Court finds that Ben Barnow of Barnow and Associates, P.C. and Charles E. Schaffer of Levin Sedran & Berman, LLP are experienced and adequate counsel and are hereby provisionally designated as Class Counsel under Federal Rule of Civil Procedure 23(a)(4).

6.      The Court preliminarily finds that the proposed settlement should be approved as: (a) the result of serious and extensive arm's-length and non-collusive negotiations; (b) falling within a range of reasonableness warranting final approval; (c) having no obvious deficiencies; and (d) warranting notice of the proposed settlement to Settlement Class Members and further consideration of the settlement at the Final Approval Hearing described below.

7.      The Final Approval Hearing shall be held before this Court on _____ _____, 2024, at _____ ___ at the Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07102, Courtroom MLK 4B. At this hearing, the Court will determine: (a) whether the proposed settlement on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; (b) whether the [Proposed] Final Judgment and Order as provided under the Settlement Agreement should be entered; (c) whether the Settlement Class should be finally certified for purposes of the settlement; (d) whether Plaintiffs and Class Counsel should be finally appointed as Class Representatives and Class Counsel; (e) the amount of attorneys' fees, costs, and expenses that should be awarded to Class Counsel; and (f) whether the Court should grant Service Awards to the Class Representatives. The Court will also hear any objections by

Settlement Class Members to: (a) the settlement; (b) the award of attorneys' fees, costs, and expenses to Class Counsel; (c) Service Awards to the Class Representatives; and (d) such other matters the Court deems appropriate.

8.     The Court approves, as to form and content, the use of the Claim Form in a form substantially similar to the claim form attached as Exhibit A to the Settlement Agreement.

9.     The Court approves, as to form and content, the Long Form Notice to be posted on the Settlement Website, in a form substantially similar to the one attached as Exhibit B to the Settlement Agreement.

10.     The Court approves, as to form and content, the Short Form Notice (Postcard Notice) and SSN Postcard Notice to be mailed to Settlement Class Members and SSN Settlement Class Members in a form substantially similar to the ones attached as Exhibits C and D to the Settlement Agreement.

11.     The Court finds that the mailing and distribution of the Class Notice substantially in the manner and form set forth in the Settlement Agreement, attached as Exhibit 1 to the Motion: (a) constitute the best notice to Settlement Class Members practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement Agreement and of the settlement and to apprise Settlement Class Members of their right to object to the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive such notice; and (d) satisfy all applicable requirements of Federal Rule of Civil Procedure 23(c)(2) and (e), the Due Process Clauses under the United States Constitution, the Rules of this Court, and other applicable laws.

12.     The firm Epiq Class Action & Claims Solutions, Inc. ("Settlement Administrator") is hereby appointed as Settlement Administrator to supervise and administer the notice procedure, as well as the processing of claims as more fully set forth below.

13.     No later than 21 days after entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will notify Settlement Class Members of the settlement with the Postcard Notices and SSN Postcard Notices, substantially similar to the forms attached to the Settlement Agreement as Exhibits C and D, by U.S. mail to all Settlement Class Members that Guardian has known addresses for. The Claims Administrator will establish and maintain a Settlement Website throughout the Claims Period, which will contain the Postcard Notices, the Long Form Notice, and the Claim Form to either submit online or download and mail to the Settlement Administrator before the Claims Deadline.

14.     Settlement Class Members who wish to submit a claim in the settlement shall complete and submit Claim Forms in accordance with the instructions contained therein. Any such claim must be postmarked or submitted electronically no later than 90 days from the date that the Class Notice is sent to submit a claim—the "Claims Deadline."

15.     The Claim Forms submitted by each Settlement Class Member must: (a) be properly completed, signed, and submitted in a timely manner in accordance with the preceding paragraph; (b) be accompanied by adequate supporting documentation, as required by and as specified in the Settlement Agreement; and (c) be complete and contain no deletions or modifications of any of the printed matter contained therein.

16.     Any Settlement Class Member who files a Claim Form shall reasonably cooperate with the Settlement Administrator, including by promptly responding to any inquiry made by the Settlement Administrator. Any Settlement Class Member who does not timely submit a Claim

Form within the time provided in the Settlement Agreement (except those Settlement Class Members who opt-out) are barred from receiving any benefits under the Settlement Agreement and shall be bound by the Settlement Agreement, the Final Judgment and Order, and the Releases therein, unless otherwise ordered by the Court.

17.     Settlement Class Members will have no later than 60 days from the date the Class Notice is issued to decide whether to exclude themselves from the settlement (the "Opt-Out Deadline"). Any Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the Claims Administrator at the address provided in the Class Notice. A written opt-out notice must include an individual signature and state the name, address, and phone number of the person seeking exclusion. A written opt-out notice must also clearly manifest a person's intent to be excluded from the Settlement Class. To be effective, a written opt-out notice must be postmarked no later than 60 days from the date the Class Notice is issued, or any other date set by the Court. Settlement Class Members who exclude themselves from the Settlement shall not be eligible to receive any benefits of nor be bound by the terms of the Settlement Agreement.

18.     Any Settlement Class Member may appear in person or through counsel, at his or her own expense, at the Final Approval Hearing to object to the Settlement. No Settlement Class Member will be heard, and no papers submitted by any Settlement Class Member will be considered, unless, no later than 60 days from the date the Class Notice is issued, the Settlement Class Member files with the Court and serves Class Counsel, Guardian and Actimize's Counsel, and Webster Bank's Counsel with written objections that: (i) include the case name and number; (ii) set forth the Settlement Class Member's full name, current address, and telephone number; (iii) contain the Settlement Class Member's original signature; (iv) state that the Settlement Class

Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; and (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position. In addition to the foregoing, objections should also provide the following information: (a) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through a lawyer) has filed an objection to any proposed class action settlement within the last three (3) years and (b) a list, by case number, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. Any Settlement Class Member who fails to object in this manner will be deemed to have waived and forfeited any and all rights he or she may have to appear separately and to object to the Settlement Agreement, and the Settlement Class Member shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation.

19.    If an objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify the attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing and include the attorney(s) name, address, phone number, e-mail address, state bar(s) to which counsel is admitted, as well as associated state bar numbers.

20.    All opening briefs and documents in support of any application by Plaintiff for a motion for attorney's fees, costs, and expenses, and for service awards for Class Representatives, shall be filed and served by no later than 14 days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement Agreement. Plaintiffs shall file a Motion for Final Approval of the Class Action Settlement no later than 14 days prior to the Final Approval Hearing.

21.     At or after the Final Approval Hearing, the Court shall determine whether any applications for service awards and for attorney's fees, costs, and expenses should be approved. The Court reserves the right to enter a Final Judgment and Order approving the Settlement regardless of whether it has awarded the service award, or attorney's fees, costs, and expenses.

22.     All reasonable expenses incurred in identifying and notifying Settlement Class Members, as well as administering the settlement, shall be the responsibility of Defendants and shall be paid out of the Settlement Fund as set forth in the Settlement Agreement.

23.     Neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendants of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind.

24.     The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement. The Court may approve the settlement, with such modifications as may be agreed to by the Parties to the settlement Agreement, if appropriate, without further notice to the Settlement Class.

25.     If the Settlement Agreement and the settlement set forth therein is not approved or consummated for any reason whatsoever, the Settlement Agreement and settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the parties to the Settlement Agreement *status quo ante*.

26.     Until otherwise ordered by the Court, the Court shall continue to stay all proceedings in the Lawsuit other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement.

27.     The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement and this Order include, but are not limited to:

| EVENT | DATE |
|---|---|
| Guardian to provide the Class Member Information to Settlement Administrator | 7 days after entry of Preliminary Approval Order |
| Notice Date | 21 days after entry of Preliminary Approval Order |
| Deadline for Plaintiffs to File Motion for Attorneys' Fees, Costs, Expenses, and Service Awards for Class Representatives | 14 days before the Opt-Out and Objection Deadlines |
| Opt-Out and Objection Deadlines | 60 days after Notice Date |
| Deadline for Parties to Respond to Objections | 14 Days after the Objection Deadline or Receipt of Any Timely Submitted Objection, whichever is later |
| Deadline for Class Members to Submit Claim Forms | 90 days after Notice Date |
| Deadline for Plaintiffs to File Motion for Final Approval of Class Action Settlement | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | No less than 100 Days after the entry of this Order |

IT IS SO ORDERED.

Date: _____

_____

**WILLIAM J. MARTINI, U.S.D.J.**

11