**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK S. HOLDEN, RICHARD ANDISIO, EDWARD MARSHALL, ANN MARIE MARSHALL, ARTHUR CHRISTIANI, JOHNIELLE DWYER, PAWEL KRZYKOWSKI, MARIOLA KRZYNOWEK, JAMES HOWE, and CINDY A. PEREIRA, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GUARDIAN ANALYTICS, INC., ACTIMIZE INC., and WEBSTER BANK, N.A., <br><br> Defendants. | Case No. 2:23-cv-02115-WJM-LDW |

**PLAINTIFFS' AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

<u>**TABLE OF CONTENTS**</u>

I.     **INTRODUCTION** ................................................................................................ 1

II.    **BACKGROUND, SETTLEMENT TERMS, AND NOTICE IMPLEMENTATION** ..................................................................................... 2

   A.    **Filing of Individual Cases and Consolidation** ................................... 2

   B.    **Legal Investigation and Settlement Negotiations** ............................ 3

   C.    **Post-Preliminary Approval Work** ..................................................... 4

   D.    **Settlement Class** ................................................................................ 4

   E.    **Relief for the Settlement Class Members** ......................................... 5

      1.    **Reimbursement/Credit Monitoring Claims** ......................... 5

      2.    **Cash Compensation** .............................................................. 7

      3.    **Business Practice Changes** ................................................... 8

      4.    **Attorneys' Fees, Costs, Expenses, and Service Awards** ....... 8

      5.    **Settlement Administration and Notice Plan** ........................ 8

III.   **ARGUMENT** .................................................................................................... 9

   A.    **The Notice Satisfies Rule 23 and Due Process** ................................. 9

   B.    **Final Approval of the Settlement is Warranted** ............................. 11

      1.    **The Complexity, Expense, and Likely Duration of the Litigation** .................... 12

      2.    **The Reaction of the Class** ................................................... 13

      3.    **The Stage of the Proceedings and the Amount of Discovery Completed** ........... 15

      4.    **The Risks of Establishing Liability and Damages** ............... 16

      5.    **The Risks of Maintaining the Class Action Through Trial** ................. 17

      6.    **The Ability of the Defendants to Withstand a Greater Judgment** ................ 18

**7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks of Litigation** ..................................... 18

**8. Prudential Factors and Baby Products Factor** ..................................... 20

**C. The Court Should Certify the Settlement Class** ..................................... 22

**1. The Settlement Class Satisfies Rule 23(a)'s Requirements** ..................................... 22

**IV. CONCLUSION** ..................................... 27

# TABLE OF AUTHORITIES

Cases                                                                    Page No.

*Alexander v. Coast Prof'l Inc.*,
   No. 12-1461, 2016 U.S. Dist. LEXIS 28422 (E.D. Pa. Mar. 7, 2016)......................................21

*Alfaro v. First Advantage LNS Screening Sols., Inc.*,
   Civil Action No. 15-5813 (MAS) (TJB), 2017 U.S. Dist. LEXIS 131688
   (D.N.J. Aug. 16, 2017)....................................................................................................23, 24

*Carter v. Vivendi Ticketing United States LLC*,
   No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744
   (C.D. Cal. Oct. 30, 2023)........................................................................................................15

*Castro v. Sanofi Pasteur Inc.*,
   No. 11-7178 (JMV)(MAH), 2017 U.S. Dist. LEXIS 174708 (D.N.J. Oct. 20, 2017)..........14, 19

*Chemi v. Champion Mortg.*,
   No. 2:05-cv-1238 (WHW), 2009 U.S. Dist. LEXIS 44860 (D.N.J. May 26, 2009).............22, 26

*Danvers Motor Co. v. Ford Motor Co.*,
   543 F.3d 141 (3d Cir. 2008).....................................................................................................23

*Dartell v. Tibet Pharm., Inc.*,
   Civil Action No. 14-3620, 2017 U.S. Dist. LEXIS 100872 (D.N.J. June 29, 2017) .................12

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ....................................................................................................11

*Dominguez v. Galaxy Recycling Inc.*,
   No. 12-7521, 2015 U.S. Dist. LEXIS 195388 (D.N.J. Dec. 10, 2015)................................24, 26

*Easterday v. USPack Logistics LLC*,
   No. 1:15-CV-07559 (RBK/AMD), 2023 U.S. Dist. LEXIS 116655
   (D.N.J. July 6, 2023)......................................................................................................22, 23, 24

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ....................................................................................................11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..................................................................................................................10

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982)..................................................................................................................17

*Georgine v. Amchem Prods.*,
   83 F.3d 610 (3d Cir. 1996) ...................................................................................23

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .................................................................................11

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ..................................................................................9

*Halley v. Honeywell Int'l, Inc.*,
   861 F.3d 481 (3d Cir. 2017) ............................................................................22, 26

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) ...............................................................................10

*In re Baby Products Antitrust Litig.*,
   708 F.3d 163 (3d. Cir. 2013) ...........................................................................12, 21

*In re Cendant Corp. Sec. Litig.*,
   109 F.Supp.2d 235 (D.N.J. 2000) ........................................................................19

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................15, 16

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
   333 F.R.D. 364 (E.D. Pa. 2019) ...........................................................................14

*In re Forefront Data Breach Litig.*,
   No. 21-cv-887, 2023 U.S. Dist. LEXIS 175848 (E.D. Wis. Mar. 22, 2023) ............................15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................................17

*In re Google, Inc. Cookie Placement Consumer Priv. Litig.*,
   No. 12-MD-2358, 2023 U.S. Dist. LEXIS 117696 (D. Del. July 10, 2023)...............................25

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012) ..................................................................................9

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) ...................................................................15, 19

*In re Morgan Stanley Data Sec. Litig.*,
   No. 1:20-cv-05914-AT (S.D.N.Y) ..........................................................................20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
 962 F. Supp. 450 (D.N.J. 1997) ...................................................................................14

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*,
 177 F.R.D. 216 (D.N.J. 1997) ...............................................................................10, 12

*In re Schering-Plough Corp.*,
 No. 08-1432 (DMC)(JAD), 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) ......18, 24, 25

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
 Civil Action No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 141475
 (D.N.J. Oct. 1, 2013) .............................................................................................14

*In re Target Corp. Customer Data Sec. Breach Litigation*,
 309 F.R.D. 482 (D. Minn. 2015) .............................................................................13

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ...................................................................11, 17, 18, 19

*In re Wawa, Inc. Data Sec. Litig.*,
 No. 19-6019, 2023 U.S. Dist. LEXIS 184635 (E.D. Pa. Oct. 12, 2023) ....................17

*Katz v. DNC Servs. Corp.*,
 No. 16-5800, 2024 U.S. Dist. LEXIS 20629 (E.D. Pa. Feb. 5, 2024) ........................14

*Keefer v. Fulton Bank, N.A.*,
 No. 1:23-md-03056 (N.D. Ga.) ................................................................................20

*Krell v. Prudential Ins. Co. of Am.*,
 148 F.3d 283 (3d Cir. 1998) ........................................................................16, 18, 19

*Larson v. Sprint Nextel Corp.*,
 No. 07-5325, 2009 U.S. Dist. LEXIS 39298 (D.N.J. Apr. 29, 2009) ......................9, 10

*Lenahan v. Sears, Roebuck & Co.*,
 No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) ...............14, 22, 26

*Marcus v. BMW of N. Am., LLC*,
 687 F.3d 583 (3d Cir. 2012) ..............................................................................17, 24

*McGee v. Cont'l Tire N. Am., Inc.*,
 No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009) ...............19

*McLennan v. LG Elecs. USA, Inc.*,
 No. 2:10-cv-03604 (WJM), 2012 U.S. Dist. LEXIS 27703 (D.N.J. Mar. 2, 2012) ..............16, 21

*McPherson v. American Bank Systems, Inc.*,
No. 20-cv-1307-G (W.D. Okl.) ...............................................................................19

*O'Brien v. Brain Rsch. Labs, LLC*,
No. 12-204, 2012 U.S. Dist. LEXIS 113809 (D.N.J. Aug. 8, 2012).........................18

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
Civil Action No. 11-2164, 2017 U.S. Dist. LEXIS 97909 (D.N.J. June 26, 2017) ...................15

*Perry v. FleetBoston Fin. Corp.*,
229 F.R.D. 105 (E.D. Pa. 2005) ...............................................................18, 25, 27

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)....................................................................................................9

*Smith v. Triad of Ala., LLC*,
No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) ...............13

*Stoetzner v. United States Steel Corp.*,
897 F.2d 115 (3d Cir. 1990) .....................................................................................14

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .....................................................................................14

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .............................................................................22, 23

*Weiss v. Mercedes–Benz of N. Am.*,
899 F. Supp. 1297 (D.N.J. 1995) .........................................................................16, 21

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 U.S. Dist. LEXIS 155951 (D.N.J. Nov. 10, 2016)...............12

<u>Rules</u>

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Mark S. Holden, Richard Andisio, Edward Marshall, Ann Marie Marshall, Arthur Christiani, Johnielle Dwyer, Pawel Krzykowski, Mariola Krzynowek, James Howe, and Cindy A. Pereira (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, respectfully submit this memorandum in support of their motion to finally approve the Settlement Agreement (ECF No. 43-2)[1] entered into by Plaintiffs and Defendants Guardian Analytics, Inc. ("Guardian"), Actimize Inc. ("Actimize"), and Webster Bank, N.A. ("Webster Bank") (collectively, "Defendants").[2]

## I.    INTRODUCTION

Plaintiffs initiated this class action litigation against Defendants, alleging that they failed to secure and safeguard Plaintiffs' and Settlement Class Members' personally identifiable information ("PII"), including names, Social Security numbers, and financial account numbers. Plaintiffs allege that between November 27, 2022, and January 22, 2023, unauthorized individuals gained access to Guardian's network systems and acquired or had access to the PII of Plaintiffs and other class members (the "Data Incident"). After months of contested, arms' length negotiations, which included mediation before the Honorable Stephen Orlofsky (Ret.), the parties reached a proposed class settlement.

On January 3, 2024, the Court preliminarily approved the Settlement and conditionally certified a Settlement Class. ECF No. 44. Following preliminary approval of the proposed settlement, notice was successfully disseminated to the Settlement Class in accordance with the

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement.

[2] The Parties' review shows that a data set of non-Settlement Class Members was sent to the Settlement Administrator. 197,270 Settlement Class Members, which is what Plaintiffs originally reported, is the correct number. If non-Settlement Class Members submit claims, they will receive a letter notifying them that they were not a part of the Settlement Class and that the Settlement does not release any claims that they might have against Defendants.

Court's order. The reaction to the Settlement has been very positive: 6,886 Settlement Class Members have chosen to file claims for benefits under the Settlement, only 29 requested exclusion, and none have objected to it.

The preliminarily-approved settlement resolves Plaintiffs' claims on a class-wide basis. The settlement is fair, reasonable, and adequate, has been well-received by the Class, and satisfies all the criteria for final approval. As such, the Court should grant the Settlement final approval.

## II.    BACKGROUND, SETTLEMENT TERMS, AND NOTICE IMPLEMENTATION

### A.  Filing of Individual Cases and Consolidation

On April 14, 2023, Plaintiffs Mark Holden and Richard Andisio filed a Class Action Complaint against Defendants alleging negligence, negligence per se, breach of implied contract, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*. based on Defendants' alleged failure to secure and safeguard Plaintiffs' and class members' PII. No. 2:23-cv-02115-WJM-LDW, Compl., ECF No. 1. In the days and weeks that followed, five additional actions asserting similar claims arising from the same Data Incident were filed: *Marshall. v. Guardian Analytics*., No. 23-2156 (filed April 18, 2023), *Christiani v. Guardian Analytics*, No. 23-2158 (filed April 18, 2023), *Dwyer v. Guardian Analytics*, No. 23-2320 (filed April 27, 2023), *Krzykowski v. Guardian Analytics*, No. 23-2322 (filed April 27, 2023), and *Pereira v. Guardian Analytics*, No. 23-2431 (filed May 3, 2023).

Plaintiffs self-organized and, on May 25, 2023, moved the Court pursuant to Fed. R. Civ. P. 42(a) and Local Rule 42.1 to consolidate the six actions. *See generally* ECF No. 16. The consolidation motion asked the Court to appoint Ben Barnow of Barnow and Associates, P.C. and Charles E. Schaffer of Levin Sedran & Berman LLP as Interim Co-Lead Counsel[3] to lead the

---

[3] Ben Barnow and Charles E. Schaffer are defined as "Class Counsel" in the Settlement Agreement and are referred to as "Class Counsel" throughout this memorandum.

consolidated litigation on behalf of Plaintiffs and the putative class. *Id*. The Court granted the motion on July 25, 2023. ECF No. 24. The Court further ordered Plaintiffs to file a consolidated complaint within 30 days. *Id*. Plaintiffs timely filed the currently operative Consolidated Amended Class Action Complaint ("CAC") on August 24, 2023. ECF No. 27. The CAC asserts claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*., and declaratory judgment against Defendants.

### B. Legal Investigation and Settlement Negotiations

Class Counsel are experienced data breach litigators. *See* Declaration of Ben Barnow, attached hereto as Exhibit 1 ("Barnow Decl."), ¶¶ 9–10; Declaration of Charles E. Schaffer, attached hereto as Exhibit 2 ("Schaffer Decl."), ¶¶ 9–11. Collectively, they have successfully litigated dozens of data breach class actions. *Id*. Following initial discussions outlining the general parameters of a potential settlement, the parties agreed to mediate and engaged the Honorable Stephen Orlofsky (Ret.) as their mediator. Barnow Decl., ¶ 3; Schaffer Decl., ¶ 3. Prior to the mediation, Class Counsel analyzed the legal landscape thoroughly—including issues related to tort remedies, contract remedies, and class certification—to fully evaluate the risks and benefits to potential early resolution. Barnow Decl., ¶ 4; Schaffer Decl., ¶ 4. Topics analyzed included the value of personal identifying information; hacking; consequences of data breaches, including exposure of private financial account information and social security numbers; industry standards for data security; and Defendants' representations regarding its security features to protect PII. Barnow Decl., ¶ 4; Schaffer Decl., ¶ 4. Class Counsel also requested and received informal discovery from Defendants, including information regarding how the Data Incident occurred,

Defendants' response to the Data Incident, and information relating to the PII impacted in the Data Incident. Barnow Decl., ¶ 5; Schaffer Decl., ¶ 5.

The full-day mediation took place on September 19, 2023. Barnow Decl., ¶ 6; Schaffer Decl., ¶ 6. The negotiations, while professional, were adversarial and conducted at arm's length. While the parties made substantial progress during the mediation, no settlement was reached at the mediation. Barnow Decl., ¶ 6; Schaffer Decl., ¶ 6. The parties continued to communicate in the days that followed the mediation, and eventually the parties were able to reach an agreement in principle on October 2, 2023. Barnow Decl., ¶ 7; Schaffer Decl., ¶ 7. This settlement is the product of hard-fought, arm's length negotiations. Barnow Decl., ¶ 7; Schaffer Decl., ¶ 7.

### C. Post-Preliminary Approval Work

After the Court's granting of Preliminary Approval, Class Counsel have performed additional work on behalf of the Settlement Class to advance the Settlement. Prior to the Notice Date, Class Counsel worked with the Settlement Administrator to finalize notice documents and the settlement website. Barnow Decl., ¶ 8; Schaffer Decl., ¶ 8. Following Notice being sent to Settlement Class Members, Class Counsel have fielded questions from Settlement Class Members regarding the settlement, filing claims, and other related issues. Barnow Decl., ¶ 8; Schaffer Decl., ¶ 8. In addition, Class Counsel have monitored the progress of claims and continue to work with counsel for Defendants to ensure that the Settlement Agreement is carried out as agreed. Barnow Decl., ¶ 8; Schaffer Decl., ¶ 8. Class Counsel will continue to diligently work on behalf of the Settlement Class through final approval and after.

### D. Settlement Class

The Settlement Class, which the Court preliminarily certified, is defined as:

All persons who were notified that their personally identifiable information may have been impacted as a result of the data incident that occurred on Guardian's

systems between November 27, 2022 and January 22, 2023. Guardian's, Actimize's, and Webster Bank's officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

¶ 16kk. [4]

### E. Relief for the Settlement Class Members

The Settlement Agreement provides that Defendants will establish a Settlement Fund in the amount of $1,430,207.50, which will be exhausted to pay all Claims of Eligible Claimants, as well as any Attorneys' Fees, Costs, Service Awards, and Settlement Administration Costs that are approved by the Court. § IV.

Settlement Class Members must timely submit a valid Claim Form in order to receive a Settlement benefit. ¶ 29. Settlement Class Members may elect to file a claim for either 1) reimbursement of certain losses and Credit Monitoring services; or 2) a cash payment. ¶ 29. Settlement Class Members have until April 24, 2024 to submit a claim.

#### 1. Reimbursement/Credit Monitoring Claims

Settlement Class Members who submit a Claim for Reimbursement/Credit Monitoring can seek reimbursement for each of 1) certain ordinary losses; 2) lost time; and 3) two years of 3 bureau credit monitoring. ¶ 30.

*Ordinary Expenses*: Settlement Class Members submitting a claim for ordinary losses may claim up to $250.00 by submitting a valid and timely claim form and reasonable supporting documentation for ordinary losses demonstrably incurred, more likely than not, as a result of the

---

[4] References to "§ __" or "¶ __" refer to the corresponding sections and paragraphs of the Settlement Agreement.

Data Incident. ¶ 30a. Ordinary losses covered by the Settlement include, *inter alia*, documented bank fees, phone charges, postage, and gasoline for local travel that have not been reimbursed by insurance or a third party. ¶ 30ai. Also covered are fees for credit reports, credit monitoring, and other identity theft insurance product purchased between July 5, 2022, and the date of the close of the Claims Period that were incurred as a result of the Data Incident and not already paid for or reimbursed by a third party. ¶ 30aii. All claims for reimbursement of costs must be reasonably described and supported by an attestation under penalty of perjury, which will be a part of the claim form. ¶ 30ai.

*Compensation for Lost Time*: Settlement Class Members may claim up to 4 hours of lost time, at $25 an hour, if at least one-half hour of documented time was spent dealing with the Data Incident. ¶ 30b. All such lost time must be reasonably described and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Incident. ¶ 30b.

*Compensation for Extraordinary Expenses.* Settlement Class Members may submit claims for up to $5,000 in compensation by submitting a valid and timely claim for monetary loss arising from identity theft or other fraud perpetuated against the Settlement Class Member if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not the result of the Data Incident; (iii) the loss is not already covered by the "Compensation for Ordinary Losses" category; and (iv) the Settlement Class Member made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance and other available insurance. ¶ 30c. Claims under this category must be supported by an attestation under penalty of perjury and

documentation substantiating the full extent of the amount claimed and will be subject to heightened scrutiny. ¶ 30c.

*Credit Monitoring*. Settlement Class Members may elect to submit a claim for 24 months of 3 bureau credit and identity theft monitoring. ¶ 30d. The credit and identity theft monitoring will feature: (i) real time monitoring of the credit file at all three major credit bureaus; (ii) identity theft insurance (no deductible) of $1,000,000; and (iii) access to fraud resolution agents to help resolve identity thefts. ¶ 30d.

### 2. Cash Compensation

In lieu of reimbursement/credit monitoring, Settlement Class Members may file a claim for either a Tier 1 or Tier 2 Alternative Cash Payment, depending on whether their Social Security number was accessed in the Data Incident. ¶ 31. The amount of Tier 1 and Tier 2 cash payments will be determined on a pro rata basis. ¶ 31.

*Tier 1 Alternative Cash Payment.* SSN Settlement Class Members are eligible for a Tier 1 Alternative Cash Payment. Tier 1 Alternative Cash Payments shall be two times (2x) the amount of a Tier 2 Alternative Cash Payment. ¶ 31a. Any Tier 2 Alternative Cash Payment claim submitted by an SSN Settlement Class Member shall be deemed a claim for a Tier 1 Alternative Cash Payment. ¶ 31a.

*Tier 2 Alternative Cash Payment.* Settlement Class Members whose Social Security numbers were not involved in the Data Incident are eligible to receive a Tier 2 Alternative Cash Payment. ¶ 31b. Tier 2 Alternative Cash Payments shall be one-half the amount of Tier 1 Alternative Cash Payments. ¶ 31b.

### 3. Business Practice Changes

Each Defendant must implement certain data security measures for a period of two years after the Settlement receives final approval by the Court. ¶ 32. These measures are set forth in more detail in the Settlement Agreement but include, *inter alia*, taking measures to improve security to prevent future data breaches, mandatory cyber security training for employees, implementation of a third-party vendor risk management program, and annual reviews of all data security policies to ensure that all data security policies are being followed and consider whether any updates are needed to meet industry best practices. ¶ 32.

### 4. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs filed an application with the Court for the requested Service Awards and attorneys' fees, costs, and expenses. *See* ECF No. 47. In that motion, Plaintiffs requested the Court approve an award of attorneys' fees of $476,735.83 (one-third of the Settlement Fund), and $9,101.19 in reasonable costs and expenses incurred in prosecuting the litigation. *Id*. The motion also requested the Court approve Service Awards of $1,000 each for the Class Representatives (or $10,000 in total) in recognition of the Class Representatives' efforts in the litigation and commitment on behalf of the Settlement Class. *Id*.

### 5. Settlement Administration and Notice Plan

All Notice and Settlement Administration Costs will be paid from the Settlement Fund. ¶ 33. The Settlement Administrator sent out the notice to Settlement Class Members on January 24, 2024. *See* Declaration of Cameron R. Azari ("Azari Decl."), attached hereto as Exhibit 3, ¶ 10. The Notice reached 99% of Settlement Class Members. *See id*. ¶ 13. As of April 8, 2024, the Settlement Administrator has received 6,886 claims. *See id*., ¶ 18.

Settlement Class Members had until March 25, 2024, to request exclusion from the Settlement Class and Object to the Settlement. As of April 8, 2024, 29 Settlement Class Members requested exclusion and zero Settlement Class Members objected to the Settlement. *See id*., ¶ 17.

The Settlement Administrator has maintained a dedicated Settlement Website since the Notice Date. The Settlement Website contains the CAC, Postcard Notice, SSN Postcard Notice, Long-Form Notice, Claim Form, and the Settlement Agreement.[5] The Settlement Website will be maintained from the Notice Date until sixty days after the Claims Deadline has passed. ¶ 58.

## III.    ARGUMENT

### A.    The Notice Satisfies Rule 23 and Due Process

Settlement Class Members are entitled to notice of the proposed Settlement and an opportunity to be heard. *See* Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). "[W]here a settlement class has been provisionally certified and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 109 (D.N.J. 2012) (citing *Larson v. Sprint Nextel Corp.*, No. 07-5325, 2009 U.S. Dist. LEXIS 39298, at *7–8 (D.N.J. Apr. 29, 2009)). "[Rule] 23(c)(2)(B)-compliant notice must inform class members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the class member's right to retain an attorney; (5) the class member's right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under." *Id.* (citing

---

[5] *See* https://websterclassactionsettlement.com/Home/Documents.

*Larson*, 2009 U.S. Dist. LEXIS 39298, at *30); Fed. R. Civ. P. 23(e)(2)(B)(i)-(vii). Rule 23(e) notice must contain a summary of the litigation sufficient to "apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 177 F.R.D. 216, 231 (D.N.J. 1997) ("*In re Prudential*").

To satisfy due process, "notice to class members must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002) (internal quotation marks omitted). Providing direct mail notice to Settlement Class Members satisfies due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (holding that mailing direct notice to class Members is the "best notice practicable").

The Notice here meets the requirements of Rule 23 and constitutional due process. On January 24, 2024, the Settlement Administrator sent Postcard Notices and SSN Postcard Notices to identified Settlement Class Members. *See* Azari Decl., ¶ 10. The Postcard Notices and SSN Postcard Notices reached approximately 99% of the Settlement Class. *See id.* ¶ 13. The Settlement Administrator also set up a Settlement Website where Settlement Class Members could obtain more information regarding the Settlement, review relevant documents, and submit a claim form. *See id.* ¶¶ 14. In addition, the Settlement Administrator set up a toll-free telephone number which allows callers to receive information about the Settlement. *See id.* ¶ 15. The Notice here was substantial and gave Settlement Class Members all of the relevant information required by Federal Rule of Civil Procedure 23.

**B. Final Approval of the Settlement is Warranted**

The Settlement is an excellent result for the Settlement Class. It provides significant financial relief to participating Settlement Class Members as compensation for the Released Claims, and relieves the Settling Parties of the burden, uncertainty, and risk of continued litigation. The Settlement is fair, reasonable, and adequate, and the Court should grant it final approval.

It is well-established in the Third Circuit that the settlement of class action litigation is favored and encouraged. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010) ("Settlement [a]greements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). In determining whether a Settlement is fair, reasonable, and adequate, courts in the Third Circuit consider two sets of factors. First, from *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), courts consider:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 157 (cleaned up) (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Second, from *In Re Prudential*, Courts also consider, when appropriate:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the

comparison between the results achieved by the settlement for individual class or subclass members and the results achieved - or likely to be achieved - for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323. The Third Circuit has also added an additional factor to test the reasonableness of a settlement: whether the settlement provides a "direct benefit" to members of the class. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d. Cir. 2013).

An analysis of the *Girsh* factors, the *Prudential* factors, and the *Baby Products* factor demonstrates that the Settlement is fair, reasonable, and adequate:

### 1. The Complexity, Expense, and Likely Duration of the Litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re NFL Players*, 821 F.3d at 437. "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Dartell v. Tibet Pharm., Inc.*, Civil Action No. 14-3620, 2017 U.S. Dist. LEXIS 100872, at *10 (D.N.J. June 29, 2017) (quoting *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 U.S. Dist. LEXIS 155951, at *34 (D.N.J. Nov. 10, 2016)).

Here, the costs, complexity, and likely duration of this case strongly favor settlement. Class action litigation is inherently complex and costly. But this action is even more complex as it involves thorny issues regarding the emerging field of data breach liability. There would undoubtedly be a contested class certification motion. Defendants would likely argue that damages could not be calculated on a class-wide basis, that differences in state law would preclude a multi-state class, and that the question of whether individual injuries were fairly traceable to the Defendants would predominate over class-wide issues. Class issues involving damages would likely generate expert discovery and Daubert motions as well. Although Plaintiffs are confident in

their ultimate success in certifying a class, *see In re Target Corp. Customer Data Sec. Breach Litigation*, 309 F.R.D. 482 (D. Minn. 2015) (certifying class in data breach case), *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) (same), a positive ruling would no doubt be challenged by a decertification motion or appeal.

Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about reasonable steps that a business must take to protect data, whether the steps taken before and after the Data Incident were reasonable, and the reliability of competing damages models, as well as the cost attributable to a data breach and the time spent rectifying any exposure of personal data. Each step towards trial would be subject to Defendants' vigorous opposition and possible interlocutory appeal. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources.

Moreover, Defendants would be expected to offer defenses at trial concerning the applicability of various statutory and common law claims, including whether Settlement Class Members were injured and had standing, whether Defendants had a duty to preserve the security of class members' data, and whether any injury suffered by Settlement Class Members would be compensable under Plaintiffs' legal theories. Although Plaintiffs believe they would ultimately prevail, litigation of this matter through trial would be complex, costly, and time-consuming. The Settlement eliminates the costs and risks associated with further litigation. It also obtains for the Settlement Class prompt compensation for prior injuries. For all of these reasons, this factor weighs strongly in favor of final approval.

## 2. The Reaction of the Class

The second *Girsh* factor "requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable."

*In re Schering-Plough Corp. Enhance Sec. Litig.*, Civil Action No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 141475, at *10 (D.N.J. Oct. 1, 2013); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997) (small number of negative responses to settlement favors approval). It is well-established that the lack of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See Castro v. Sanofi Pasteur Inc.*, No. 11-7178 (JMV)(MAH), 2017 U.S. Dist. LEXIS 174708, at *10 n.3 (D.N.J. Oct. 20, 2017).

The Settlement Class has reacted very favorably to the Settlement. As of April 8, 2024, no Settlement Class members have objected to the Settlement and only 29 (0.0147% of the Settlement Class) have requested exclusion from the Settlement. *See* Azari Decl. ¶ 17. This demonstrates that the Settlement Class has reacted overwhelmingly positively to the Settlement. *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that the fact there were 29 objectors out of a class of 281 "strongly favors settlement"); *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 U.S. Dist. LEXIS 60307, at *39 (D.N.J. July 10, 2006) (holding that 190 opt-outs and 6 objections in a class of 16,252 weighed in favor of approval); *Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629, at *23 (E.D. Pa. Feb. 5, 2024) (discussing favorable reaction of the 820-person settlement class where four persons opted out (0.49%) of the settlement and none objected). Additionally, 6,886 persons have submitted claims under the Settlement. *See* Azari Decl. ¶ 18. This means the Settlement has had a claim rate of 3.5%, and the claim deadline is not until April 24, 2024. *See* Azari Decl. ¶ 18. This is a typical claim rate for a consumer class action. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (noting that claim rates in consumer class actions "rarely exceed seven percent"); *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 386 (E.D. Pa. 2019) (finally approving settlement with a

0.58% claim rate); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744, at *28 (C.D. Cal. Oct. 30, 2023) (holding that a 1.8% claim rate "is in line with claim rates in other data breach class action settlements that courts have approved" and collecting cases); *In re Forefront Data Breach Litig.*, No. 21-cv-887, 2023 U.S. Dist. LEXIS 175848, at *14 (E.D. Wis. Mar. 22, 2023) (stating that a claim rate of 1.47% "is generally in line with the rate experienced in other data breach class actions").

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The purpose of the third factor is to determine "the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). "[C]ourts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id*. However, "[t]he fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, Civil Action No. 11-2164, 2017 U.S. Dist. LEXIS 97909, at *21 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig*., 900 F. Supp. 2d 467, 482 (D.N.J. 2012).

Here, in addition to conducting extensive legal research into the merits of the case (and likelihood of protracted litigation), the parties have engaged in informal settlement discovery, exchanged mediation briefs, and mediated before the Honorable Stephen Orlofsky (Ret.). This factor therefore weighs in favor of approval of the Settlement.

In this case, the parties reached the Settlement prior to engaging in formal discovery. However, the Plaintiffs engaged in a preliminary investigation of the case, as evidenced by their

consolidated complaint, and obtained informal discovery from Defendants prior to settlement discussions commencing. Thus, while discovery was not advanced here, the parties had an adequate appreciation of the merits of the case. Accordingly, this factor does not weigh against final approval. *Cf. Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though the case was still in the early stages of discovery); *see also McLennan v. LG Elecs. USA, Inc.*, No. 2:10-cv-03604 (WJM), 2012 U.S. Dist. LEXIS 27703, at *16 (D.N.J. Mar. 2, 2012) (same).

### 4. The Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 319 (3d Cir. 1998). In other words, these factors attempt "to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238. Both factors weigh in favor of approval in this case.

Here, Plaintiffs face significant hurdles in proving their cases. Although Plaintiffs believe that Defendants owed a duty to protect the security of Plaintiffs' private information and breached that duty by failing to implement reasonable security measures, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" regarding the calculations of damages, which would be both time consuming and expensive. Even if Plaintiffs were successful at trial, Defendants would likely appeal, which would further delay resolution of the suit and impede finality. Accordingly, given the real and extensive risks involved in Plaintiffs' cases, these two factors weigh heavily in favor of approval of the settlement.

## 5. The Risks of Maintaining the Class Action Through Trial

The sixth *Girsh* factor also supports approving the proposed settlement. Plaintiffs would need to maintain class certification throughout the length of the suit, and Defendants could challenge certification and move to decertify at any point. "'[T]he prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action.'" *In re Warfarin*, 391 F.3d at 537 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995)). Thus, "this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Id.*

It is far from certain that Plaintiffs' class would survive the "rigorous analysis" of class certification. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). For instance, the Court could find that the class is too broad to comport with the predominance requirement of Rule 23(b). *See, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2023 U.S. Dist. LEXIS 184635, at *33 (E.D. Pa. Oct. 12, 2023) (noting "data breach class actions involve 'a risky field of litigation because data breach class actions are uncertain and class certification is rare'" (citation omitted)). In addition to the challenges inherent in certifying a potential class spanning multiple states, Plaintiffs must proffer a suitable mechanism for calculating class-wide damages. While Plaintiffs believe they could establish the existence of such a mechanism to the Court's satisfaction, this Settlement eliminates the unavoidable risk that they cannot. Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "There will always be a 'risk' or possibility of decertification, and consequently the

court can always claim this factor weighs in favor of settlement." *Krell*, 148 F.3d at 321. Given the risks, this factor weighs in favor of final approval.

### 6. The Ability of the Defendants to Withstand a Greater Judgment

The Third Circuit has explained that the mere fact that a defendant "could afford to pay more" in a judgment than it agrees to pay in a settlement "does not mean that [defendant is] obligated to pay any more than what [the] class members are entitled to under the theory of liability that existed at the time the settlement was reached." *In re Warfarin*, 391 F.3d at 538. Although there is no indication that Defendants have serious financial problems, "this factor's importance is lessened by the obstacles the class would face in establishing liability and damages." *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 116 (E.D. Pa. 2005). Even if Defendants could potentially withstand a greater judgment, this factor "does not, however, standing alone, render the settlement unreasonable." *In re Schering-Plough Corp.*, No. 08-1432 (DMC)(JAD), 2012 U.S. Dist. LEXIS 75213, at *15 (D.N.J. May 31, 2012); *O'Brien v. Brain Rsch. Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at *57 (D.N.J. Aug. 8, 2012) ("Regardless, the Court of Appeals has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement."). At worst, this factor is neutral. *See In re Warfarin*, 391 F.3d at 538 ("Here, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement. We see no error here.").

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks of Litigation

The eighth and ninth factors concerning the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation also weigh in favor of settlement. "The fact that a proposed settlement may only amount to a fraction of the potential

recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*." *McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, at *18 (D.N.J. Mar. 4, 2009) (quoting *In re Cendant Corp. Sec. Litig.,* 109 F.Supp.2d 235, 263 (D.N.J. 2000)).

Assessment of a settlement, however, need not be tied to an exact formula. *See Krell*, 148 F.3d at 322.The Third Circuit has cautioned against demands that a settlement approach the maximum possible recovery, noting that a settlement is, after all, a compromise. *Id*. at 316-17. "In conducting this evaluation, it is recognized that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *Castro*, 2017 U.S. Dist. LEXIS 174708, at *15 (citing *Johnson & Johnson*, 900 F. Supp. 2d at 484–85). "[C]lass action settlements are presumptively fair where (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *See In re Warfarin*, 391 F. 3d at 35 (internal quotation marks omitted).

Here, the relief that the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The Settlement Agreement, which amounts to approximately $7.25 per Settlement Class Member, exceeds or is in line with many recent class action settlement agreements relating to financial data breaches. *See, e.g.*, *McPherson v. American Bank Systems, Inc.*, No. 20-cv-1307-G (W.D. Okl.), ECF Nos. 54, 73 (finally approving financial data breach settlement with a $1,700,000 fund for class of 554,000 persons ($3.07 per class member)); *In re Morgan Stanley*

*Data Sec. Litig.*, No. 1:20-cv-05914-AT (S.D.N.Y), ECF No. 156 (finally approving financial data breach settlement with a $60,000,000 fund for a class of approximately 15,400,000 persons (~$3.90 per class member)); *Keefer v. Fulton Bank, N.A.*, No. 1:23-md-03056 (N.D. Ga.), ECF No. 106, (finally approving settlement making available $750,000 in benefits for approximately 111,663 persons ($6.72 per class member)). Additionally, the remediation measures agreed to be undertaken by Defendants as part of the Settlement, which are not considered in the per capita recovery amount discussed above, will minimize the risk of further harm in the future. Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to economic damages incurred.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would certainly lead to substantial expenditure of resources by both parties and the Court. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness."

Moreover, the Settlement is presumptively fair as all of the above factors were met here – the parties negotiated with the assistance of a retired Magistrate Judge, pre-mediation discovery was completed, Class Counsel is very well-experienced in similar litigation, and there have been no objections as of this date.

### 8. Prudential Factors and Baby Products Factor

The Settlement also meets the *Prudential* factors and the *Baby Products* factor. The Settlement meets the first *Prudential* factor, which relate to the maturity of the underlying issues. In this case, although the Parties did not conduct formal discovery, Defendants provided Plaintiffs with informal discovery to allow for Plaintiffs and Class Counsel to determine the circumstances

surrounding this litigation. This is sufficient for approval of settlement. *See*, *e.g.*, *Weiss*, 899 F. Supp. at 1301 (approving a settlement even though the case was still in the early stages of discovery); *McLennan*, 2012 U.S. Dist. LEXIS 27703, at *16 (same). The second and third *Prudential* factors, which relates to the existence of other classes and subclasses, is irrelevant here, as the Settlement Class encompasses all persons whose PII/PHI was affected in the Data Incident. The fourth *Prudential* factor is met because Settlement Class Members are afforded the ability to opt out of the Settlement. *See* § VIII. Plaintiff separately filed a Motion for Attorneys' Fees, Costs, and Expenses, which discusses in depth why Plaintiffs' request for attorneys' fees, costs, and expenses is reasonable. *See* ECF No. 47. Finally, the sixth *Prudential* factor is also met, as the Court appointed a Settlement Administrator to carry out the claims process, Settlement Class Members were sent direct notice of the Settlement, and all Settlement Class Members are able to submit claims online or via a paper claim form. *See* Azari Decl. ¶ 18. The Settlement Administrator is very experienced in class action claims processing. *See id.* ¶ 3. Accordingly, the claims processing procedure here is fair and reasonable, and this factor favors approval. *See Alexander v. Coast Prof'l Inc.*, No. 12-1461, 2016 U.S. Dist. LEXIS 28422, at *15 (E.D. Pa. Mar. 7, 2016).

The Settlement also meets the *Baby Products* factor, which analyzes whether a settlement provides "direct benefits to the settlement class. *See In re Baby Products*, 708 F.3d at 174. This factor is easily met here, as all Settlement Class Members can receive either credit monitoring and reimbursement under the Settlement or an Alternative Cash Payment. *See* ¶¶ 30–31.

As the Settlement meets all factors for fairness, reasonableness, and adequacy, the Court should finally approve the Settlement.

### C. The Court Should Certify the Settlement Class

Rule 23 "allows the Court to certify a class for settlement purposes only." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 228 (D.N.J. 2005). "To certify a class for settlement purposes, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met." *Easterday v. USPack Logistics LLC*, No. 1:15-CV-07559 (RBK/AMD), 2023 U.S. Dist. LEXIS 116655, at *5 (D.N.J. July 6, 2023) (citing *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 487 (3d Cir. 2017)). The Court may consider the proposed settlement in determining whether Rule 23's requirements are met. *Halley*, 861 F.3d at 487.

### 1. The Settlement Class Satisfies Rule 23(a)'s Requirements

Rule 23(a)'s requirements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *Halley*, 861 F.3d at 487 n.6; Fed. R. Civ. P. 23(a).

#### Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number of plaintiffs required to satisfy this requirement, but numerosity is presumed satisfied if there are more than 40 class members. *See Easterday*, 2023 U.S. Dist. LEXIS 116655, at *7. Here, there are approximately 197,270 Settlement Class Members. Such a large class makes joinder impracticable, and courts in this Circuit have held smaller classes satisfy the numerosity requirement. *E.g.*, *Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *21 (finding class of 4,000 individuals satisfied numerosity); *Chemi v. Champion Mortg.*, No. 2:05-cv-1238 (WHW), 2009 U.S. Dist. LEXIS 44860, at *18 (D.N.J. May 26, 2009) (finding class of over 900 individuals satisfied numerosity).

**Commonality and Predominance**

Where, as here, a class is sought to be certified under Rule 23(b)(3), "the commonality requirement of Rule 23(a) 'is subsumed by the predominance requirement' of Rule 23(b)(3)." *Easterday*, 2023 U.S. Dist. LEXIS 116655, at *7 (quoting *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008)); *see also Varacallo*, 226 F.R.D. at 230 ("It is customary in Rule 23(b)(3) class actions for courts to jointly apply the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance tests."). "Rule 23(a)(2) requires that 'there are questions of law or fact common to the class,' and Rule 23(b)(3) requires 'that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" *Georgine v. Amchem Prods.*, 83 F.3d 610, 626 (3d Cir. 1996) (quoting Fed. R. Civ. P. 23).

Plaintiffs allege that Defendants failed to adequately protect their PII, which led to the Data Breach. Common questions include (1) whether Defendants violated applicable state statutes with respect to protecting PII; (2) whether Defendants' actions or failures to act violated the common law; and (3) the appropriate measure of class damages. Defendants' alleged actions or inactions with respect to protecting PII affected all members of the Settlement Class, and all Settlement Class Members were harmed as a result of Defendants' alleged conduct. The focus of any proof is on Defendants' actions and failure to protect Plaintiffs' and Settlement Class Members' PII. Therefore, both the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) are satisfied. *See Alfaro v. First Advantage LNS Screening Sols., Inc.*, Civil Action No. 15-5813 (MAS) (TJB), 2017 U.S. Dist. LEXIS 131688, at *6–7 (D.N.J. Aug. 16, 2017) ("In particular, to prove alleged violations of the FCRA, Plaintiff Kelly would have to focus on Defendant's conduct rather than on any individual factual differences in the class members' conduct. Accordingly, the Court finds that the proposed class satisfies the commonality and

predominance requirements in Rules 23(a)(2) and 23(b)(3), respectively."); *Easterday*, 2023 U.S. Dist. LEXIS 116655, at *8 (holding predominance and commonality requirements met where there were common questions that could be "answered with 'common, as opposed to individualized, evidence' because they concern [d]efendant's treatment of the class generally"); *Dominguez v. Galaxy Recycling Inc.*, No. 12-7521, 2015 U.S. Dist. LEXIS 195388, at *6 (D.N.J. Dec. 10, 2015) (predominance and commonality satisfied where the action arose from a "common wrong," there were "many common issues of law and fact common to all members of the putative class" and "[q]uestions concerning [d]efendants' liability will involve the same facts and will require the same evidence").

### Typicality and Adequacy

"The adequacy and typicality analyses under Rules 23(a)(3) and 23(a)(4), respectively, often merge and may, therefore, be discussed together." *Alfaro*, 2017 U.S. Dist. LEXIS 131688, at *7. Typicality is satisfied when "a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members." *See Easterday*, 2023 U.S. Dist. LEXIS 116655, at *9 (quoting *Marcus*, 687 F.3d at 598); Fed. R. Civ. P. 23(a)(3). Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement involves two inquiries: "(1) whether counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek to represent." *Easterday*, 2023 U.S. Dist. LEXIS 116655, at *9.

Plaintiffs, like all Settlement Class Members, had their PII stolen in the Data Breach, and plead causes of action common to all Settlement Class Members. As such, they satisfy the typicality requirement. *See, e.g.*, *In re Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 75213, at

*10 (typicality satisfied where "the claims of both named Plaintiffs and the absent class members are wholly based on the violation of duties owed under ERISA in the same course of conduct"); *Perry*, 229 F.R.D. at 112 (typicality satisfied where plaintiffs and class members would rely on the same legal theories to establish defendant's liability); *In re Google, Inc. Cookie Placement Consumer Priv. Litig.*, No. 12-MD-2358, 2023 U.S. Dist. LEXIS 117696, at *15 (D. Del. July 10, 2023) (typicality satisfied where "the claims of the representative parties are the same as the claims of the rest of the class and all class members share similar injuries (alleged violations of privacy rights) all flowing from the same alleged conduct by [defendant]").

The adequacy requirement is similarly satisfied. Here, as shown by their appointment, Class Counsel have extensive experience in complex litigation and class action proceedings throughout the United States. As previously discussed, the Settlement was reached after arm's length negotiations with the assistance of a neutral third-party mediator, the Honorable Stephen Orlofsky (Ret.), and following vigorous pursuit by Counsel. Class Counsel are therefore more than adequate for purposes of certification herein. *See In re Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 75213, at *10 ("Further, counsel's firm resumes and experience clearly indicate their adequacy.").

Plaintiffs also satisfy the adequacy requirement. Here, the claims of all Plaintiffs and Settlement Class Members arise from Defendants' alleged failure to protect PII properly. This alleged failure affected all Plaintiffs and Settlement Class Members in the same way. Accordingly, the interests of Settlement Class Members and Plaintiffs are entirely aligned because they arise from the same course of conduct by Defendants and rely upon identical legal theories. *See, e.g.*, *In re Google, Inc. Cookie Placement Consumer Priv. Litig.*, 2023 U.S. Dist. LEXIS 117696, at *15–16 (holding "there are no serious conflicts between the class representatives and the other class

members because they all suffered the same injury and assert the same claims based on the same alleged conduct by [defendant]"); *Halley*, 861 F.3d at 487 ("interests of the class representatives [a]re adequately aligned with the other class members because they allegedly suffered the same harm . . . and they seek the same remedy").

### 2. The Settlement Class Satisfies Rule 23(b)(3)'s Requirements

Rule 23(b)(3) authorizes class certification if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed above, the Settlement Class satisfies the predominance requirement. *See* Sec. IV.C.1., *supra*.

The superiority element is satisfied when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing superiority, the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Dominguez*, 2015 U.S. Dist. LEXIS 195388, at *7 (quoting Fed. R. Civ. P. 23(b)(3)).

Here, a class action is the superior method for adjudicating the controversy because there is a large number of Settlement Class Members "and, therefore, traditional methods of joinder and consolidation are impracticable." *Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *28. Additionally, as each Settlement Class Member's potential recovery is relatively small, pursing individual actions would be inefficient and impracticable. *See, e.g.*, *Chemi*, 2009 U.S. Dist. LEXIS 44860, at *23–24 (superiority satisfied where "the amount of recovery that each [class[ member will receive is relatively modest, leaving individual class members with minimal incentive and little ability to

litigate their claims against [defendant] independently"); *Perry*, 229 F.R.D. at 113 ("Given the relatively small amount of money at stake when considering each claim separately, it is unlikely that class members would elect to file individual lawsuits against [defendant]. It would also be terribly inefficient to maintain thousands of lawsuits against [defendant] based on similar factual predicates and the same legal theories. Therefore, a class action is clearly the superior method for adjudicating this controversy."). Accordingly, a class action is superior to other available options for fair and efficient adjudication of this action.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) finally certifying the Settlement Class for settlement purposes; (2) granting final approval of the Settlement; (3) finding that Notice has been conducted in accordance with the Court-approved notice plan and due process; (4) granting Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards;  and (5) dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Defendants relating to the Data Breach.


Dated: April 23, 2024                                    Respectfully submitted,

*/s/ Adam Pollock*
Adam Pollock
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
adam@pollockcohen.com

*Local Counsel for Plaintiffs Mark S. Holden and Richard Andisio*

Ben Barnow*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630

Chicago, IL 60606
(312) 621-2000
b.barnow@barnowlaw.com

Charles E. Schaffer*
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500
cschaffer@lfsblaw.com

*Interim Co-Lead Class Counsel*

*admitted pro hac vice